A05A0683. TROTTER v. SUMMEROUR.
(614 SE2d 887)

BERNES, Judge.

This is an appeal from an order entered by the Superior Court of Habersham County requiring counsel for plaintiff Richard Trotter to pay the attorney fees and expenses of litigation incurred by defendant Bardel Summerour. For the reasons set forth below, we affirm the trial court's decision to award attorney fees and expenses under OCGA § 9-15-14 (a) based on its determination that Trotter's claims for punitive damages and attorney fees were frivolous. However, we vacate the award of fees and expenses because the trial court failed to properly limit the award to those fees and expenses incurred in defending against the frivolous claims.

Trotter commenced this tort action against Summerour, d/b/a TBJ Welding Service, alleging that a house trailer fell on him while he was working underneath it because of Summerour's negligent welding work. At the time of the incident, Trotter was removing blocks from underneath the house trailer in order to move the trailer to a new location. Previously, the owner of the trailer had hired Summerour to weld a metal tongue back onto the frame of the trailer, which had been removed when the trailer was first placed up onto concrete blocks. Trotter alleged that Summerour knew that the house trailer would be raised by the tongue to permit workers to get underneath it and prepare it for moving, but that Summerour nevertheless welded the tongue onto the frame using improper and inadequate welding techniques. Trotter further contended that the tongue broke in the spot where Summerour had welded it to the trailer frame, which caused the trailer to fall on him, resulting in severe pain and serious back injuries. Trotter prayed for general damages, special damages, punitive damages, and attorney fees.

Trotter voluntarily dismissed his complaint on January 7, 2002. Trotter refiled his suit on March 20, 2002, raising the same allegations and again praying for damages that included punitive damages and attorney fees. The case subsequently was tried before a jury on August 11 and 12, 2003. Once Trotter presented his case-in-chief, Summerour moved for a directed verdict, which the trial court

granted as to the punitive damages and attorney fees claims, but denied as to the issue of negligence and the claims for general and special damages. The jury later returned a verdict in favor of Summerour on all remaining claims.

Thereafter, Summerour timely filed a motion for attorney fees and expenses pursuant to OCGA § 9-15-14. After conducting an evidentiary hearing, the trial court granted in part and denied in part Summerour's motion. The trial court determined that because the claims for general and special damages survived the motion for directed verdict, those claims did not lack substantial justification and did not otherwise provide a basis for a fee award under OCGA § 9-15-14 (a) or (b). However, the trial court, quoting from OCGA § 9-15-14 (a), found as to the punitive damages and attorney fees claims that "there existed such a complete absence of any justiciable issue of law [or] fact that it could not be reasonably believed that a Court would accept the asserted claim, defense or other position." Based on this finding, the court "conclude[d] as a matter of law that defendant is entitled under OCGA § 9-15-14 (a) to an award of attorney's fees" and that the fees and expenses should be paid solely by Trotter's counsel. After reducing the billable rate proposed by Summerour, the trial court held that Trotter's counsel had to pay fees and expenses incurred by Summerour in litigating the entire case, including time expended on the original lawsuit which had been voluntarily dismissed. Trotter sought discretionary review of the trial court's order, which we granted.

1. Trotter challenges on several grounds the trial court's decision to award attorney fees and expenses to Summerour based on Trotter's punitive damages and attorney fees claims, which the court deemed frivolous. "We review a trial court's ruling on an OCGA § 9-15-14 (a) motion for attorney fees under the 'any evidence' standard. . . ." (Citation omitted.) *Kilgore v. Sheetz*, 268 Ga. App. 761, 770 (2) (603 SE2d 24) (2004). If any evidence exists to support the trial court's grant of the motion, we are compelled to affirm. *Haggard v. Bd. of Regents &c. of Ga.*, 257 Ga. 524, 527 (4) (c) (360 SE2d 566) (1987). Based on the record before us, we are compelled under the "any evidence" standard to conclude that the trial court did not err in awarding fees and expenses pursuant to OCGA § 9-15-14 (a) on the punitive damages and attorney fees claims.

We turn first to Trotter's claim for punitive damages brought against Summerour for the alleged defective welding. Under OCGA § 51-12-5.1 (b),

Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice,

fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

"[S]omething more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage." (Citations and punctuation omitted.) *Roseberry v. Brooks*, 218 Ga. App. 202, 209 (4) (461 SE2d 262) (1995). "Mere negligence, although gross, will not alone authorize the recovery of punitive damages." (Citation and punctuation omitted.) *Alliance Transp. v. Mayer*, 165 Ga. App. 344, 345 (301 SE2d 290) (1983). See also *Tower Financial Svcs. v. Smith*, 204 Ga. App. 910, 918 (5) (423 SE2d 257) (1992). In contrast to gross negligence, the expression "conscious indifference to consequences" means "an intentional disregard of the rights of another, knowingly or willfully disregarding such rights." (Citation omitted.) *Dow Chem. Co. v. Ogletree, Deakins, Nash, Smoak & Stewart*, 237 Ga. App. 27, 31 (3) (514 SE2d 836) (1999).

In light of this standard for awarding punitive damages, the trial court did not err in awarding fees and expenses on Trotter's punitive damages claim. Our review of the record reveals that, at most, Trotter was justified in asserting a claim of ordinary negligence against Summerour, and that Trotter's counsel "could have made this determination with a minimum amount of diligence." *Bankhead v. Moss*, 210 Ga. App. 508, 510 (1) (436 SE2d 723) (1993). Even when construed in Trotter's favor, the only evidence developed by him during discovery and at trial concerning the welding job indicated that Summerour did not prepare the trailer frame properly for welding and used improper welding techniques on portions of the frame. Indeed, Trotter's expert witness on welding techniques (who did not inspect the tongue until three years after the incident) noted that the welding job involved in this case was a difficult one to carry out properly, further indicating that this was not a case involving special circumstances of aggravation or outrage.

Furthermore, Trotter has not provided a single record citation to any evidence developed during discovery or at trial suggesting that Summerour knew at the time he welded the tongue on the trailer frame that it would be used for anything other than pulling the trailer.[1] Nor has Trotter pointed to any record evidence suggesting that at the time the case was initially filed or during discovery, there

---

[1] The burden is on the party alleging error to provide citations to the record supporting reversal of the trial court's decision. *Warren v. Weber & Warren Anesthesia Svcs.*, 272 Ga. App. 232, 239, n. 5 (612 SE2d 17) (2005).

was information available to Trotter or his attorney that otherwise led them to believe that they would be able to recover punitive damages, even though that information later turned out to be faulty once the case came to trial. See *C & S Trust Co. v. Trust Co. Bank*, 262 Ga. 345 (417 SE2d 148) (1992) (per curiam). For all of these reasons, we conclude that the trial court had a basis in the record for holding that there was a complete absence of any justiciable issue of law or fact justifying Trotter's punitive damages claim.[2] Trotter simply "presented no evidence to substantiate [his] theory" of recovery for punitive damages. *Ellis v. Stanford*, 256 Ga. App. 294, 298 (6) (568 SE2d 157) (2002).

The same conclusion is justified with regard to Trotter's attorney fees claim. At trial, Trotter's counsel argued that Trotter was entitled to obtain attorney fees from Summerour for the same reason he was entitled to punitive damages. Hence, in light of our conclusion regarding Trotter's punitive damages claim, the trial court also was entitled to find that there was a complete absence of any justiciable issue of law or fact justifying Trotter's attorney fees claim and, therefore, to award fees and expenses on that ground as well.

2. We next turn to Trotter's contention that the *amount* of fees and expenses awarded by the trial court under OCGA § 9-15-14 (a) was improper. From the face of the trial court's order and its reference to the attorney fees records prepared by Summerour's counsel that are included in the record on appeal, it is clear that the court did not limit the fees award to those fees and expenses incurred by Summerour in litigating against the frivolous punitive damages and attorney fees claims raised by Trotter. Rather, the trial court held Trotter's counsel liable for fees and expenses incurred by Summerour on all the claims raised in this case. We conclude that the trial court committed reversible error by not apportioning fees between those incurred in defending against the claims deemed frivolous that were raised by Trotter, and those fees incurred in defending against the nonfrivolous claims.

The trial court reasoned that "a party acting in bad faith should pay the full price for losing, not simply those fees attributable to the

---

[2] We note that although the trial transcript, pleadings, exhibits, and several deposition transcripts have been included in the record on appeal, the transcript of the hearing held on the attorney fees issue was not included. "[I]t is the duty of the appellant to include in the record those items which will enable the appellate court to perform an objective review of the evidence and proceedings." (Citation omitted.) *Atwood v. Southern Bedding Co.*, 236 Ga. App. 116 (1) (511 SE2d 232) (1999). Thus, to the extent that evidence was presented at the attorney fees hearing beyond what can be gleaned from the trial transcript, pleadings, exhibits, and deposition transcripts, it is not available for us to consider. "[W]here the transcript is necessary . . . and appellant omits it from the record on appeal . . . the appellate court must assume the judgment below was correct and affirm." (Citations omitted.) Id.

claims upon which the movant prevailed." The court cited *CSX Transp. v. West*, 240 Ga. App. 209, 212 (3) (a) (523 SE2d 63) (1999), in support of this proposition. However, the *CSX* case involved an award of attorney fees under OCGA § 13-6-11, whereas the attorney fees at issue here were awarded under OCGA § 9-15-14. These two statutes, OCGA § 9-15-14 and § 13-6-11, allow for awards of attorney fees based on entirely different categories of sanctionable conduct. On the one hand, OCGA § 9-15-14

> applies to conduct occurring *during the litigation*. OCGA § 13-6-11, on the other hand, permits an award of attorney fees where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. It applies to conduct *arising from the underlying transaction*.

(Citations and footnotes omitted; emphasis supplied.) *Ellis*, 256 Ga. App. at 297-298 (6). Thus, the trial court's reliance on *CSX* to support the nonapportionment of fees under OCGA § 9-15-14 was misplaced.[3]

Indeed, we have held that in cases involving OCGA § 9-15-14 (a) or (b), the trial court must limit the fees award "to those fees incurred because of [the] sanctionable conduct." *Harkleroad v. Stringer*, 231 Ga. App. 464, 472 (6) (499 SE2d 379) (1998). See also *Santora v. American Combustion*, 225 Ga. App. 771, 776 (3) (485 SE2d 34) (1997); *Duncan v. Cropsey*, 210 Ga. App. 814, 815-816 (2) (437 SE2d 787) (1993). "Lump sum" attorney fees awards are not permitted in Georgia. *Huggins v. Chapin*, 233 Ga. App. 109 (503 SE2d 356) (1998). With respect to OCGA § 9-15-14 (a), the trial court is required to exclude from any sanctions award those fees and expenses unrelated to defending against the claims deemed frivolous. See *Harkleroad*, 231 Ga. App. at 472 (6). As such, the trial court erred in assessing attorney fees for the entire litigation rather than specifically limiting the award to fees incurred by Summerour in defending against the punitive damages and attorney fees claims raised by Trotter, if any.

Finally, because the issue will recur on remand, we also address whether the trial court is entitled to award attorney fees and expenses for time specifically expended on the frivolous claims that occurred during the course of the original suit filed by Trotter that was voluntarily dismissed. We conclude that the trial court is authorized to do so on remand. Trotter refiled his suit approximately two

---

[3] We also point out that *CSX* conflicts with *Forsyth County v. Martin*, 279 Ga. 215, 219 (2) (c) (610 SE2d 512) (2005), and *United Cos. Lending Corp. v. Peacock*, 267 Ga. 145, 147 (2) (475 SE2d 601) (1996).

months after it was voluntarily dismissed, raising the same allegations and seeking the same types of damages. Since Trotter properly renewed his suit, the deadline for Summerour to file a fees motion under OCGA § 9-15-14 for time expended on the voluntarily dismissed suit did not begin to run until the "final disposition" of the renewed suit. *Meister v. Brock*, 268 Ga. App. 849, 849-850 (1) (602 SE2d 867) (2004) (if suit is voluntarily dismissed, 45-day time limit set forth in OCGA § 9-15-14 (e) does not begin to run until a second dismissal, or if the case is not renewed, until expiration of the original statute of limitation period or six months after the discontinuance or dismissal, whichever is later). As such, we conclude that as part of his request for sanctions timely filed after final disposition of the renewed suit, Summerour was entitled to seek fees and expenses incurred in defending against the frivolous claims during the course of the original suit. See id. at 850 (interpretations of the 45-day fees motion deadline should be avoided that would cause "a litigant [to] lose the right to seek OCGA § 9-15-14 penalties after a dismissal that proved to be only temporary rather than final"). See also *Moore v. Harris*, 201 Ga. App. 248, 250 (2) (410 SE2d 804) (1991) (upholding fees award in second suit under OCGA § 9-15-14 that included fees and expenses incurred during original suit that was later voluntarily dismissed, even though original suit was filed before the effective date of the fees statute).[4]

For the foregoing reasons, we affirm the trial court's decision to award attorney fees and expenses under OCGA § 9-15-14 (a) based on Trotter's claims for punitive damages and attorney fees. However, we vacate the award of fees and expenses, and we remand to the trial court to revise its attorney fees award in a manner consistent with this opinion.

*Judgment affirmed in part and vacated in part and case remanded with direction. Blackburn, P. J., and Miller, J., concur.*

DECIDED MAY 12, 2005.

---

[4] The present case is distinguishable from *Gist v. DeKalb Tire Co.*, 223 Ga. App. 397 (477 SE2d 616) (1996). In *Gist*, the defendant company failed to file its sanctions motion under OCGA § 9-15-14 in the second suit in a timely manner following the final disposition of that suit; rather, the company filed its sanctions motion 55 days after the second suit was dismissed. Id. at 397. As such, the company's attempt in that same motion to seek sanctions for conduct arising in the original suit that was voluntarily dismissed likewise was untimely.

*Jack E. Dodd*, for appellant.
*James N. Butterworth*, for appellee.