A06A0010. HALL et al. v. CHRISTIAN CHURCH OF GEORGIA, INC. et al.
(634 SE2d 793)

BARNES, Judge.

Appellants Charles B. Hall and Nina B. Hall (Hall) filed an application for a processioning in the probate court, pursuant to OCGA § 44-4-2, to determine all of the boundary lines of their property. The respondents to the application were owners of property abutting Hall's land, including Christian Church of Georgia, Inc., Standard Sand & Silica Company, Alan G. Carter, Ivey and Jan B. Dennard, C. W. Farmer, and the Bank of America as executor of the estate of M. R. Hodges and Lavern Barlow. Hall disagreed with the boundaries set by the processioners and filed a protest to their findings, which the probate court transferred to superior court.

Before trial in superior court, the parties stipulated to the location of the eastern boundary line, although not to its length and after Hall rested, the trial court directed a verdict against him as to location but not length of the southern and northern boundaries and to the length of the eastern boundary. The jury returned a verdict finding that the western boundary of Hall's property was not the boundary set by the processioners, but instead the boundary found by a previous surveyor. This finding set the length of the southern and northern boundaries.

After the trial court entered judgment, the defendants moved for attorney fees pursuant to OCGA § 9-15-14, which the trial court granted against Hall personally in the amount of $35,005.36. Hall appeals, contending that the trial court erred in granting a partial directed verdict and in granting attorney fees to the defendants. For the reasons that follow, we affirm the direct verdict grant, but because the trial court included no findings of fact in its award of attorney fees, we vacate in part and remand the case to the trial court for further proceedings.

"This court, rather than the Supreme Court, has jurisdiction because processioning actions are statutory in nature and not intended to establish title. The only object of such proceeding is to mark anew existing land lines." (Citations and punctuation omitted.) *Elder v. Merritt*, 204 Ga. App. 163, 164 (418 SE2d 774) (1992).

> A landowner in rural Georgia may apply to the local probate court to have his land resurveyed and its lines re-marked by the duly appointed processioners of the district. OCGA § 44-4-2. The county surveyor and the processioners bear the obligation of arriving at the true lines and tracing out and plainly marking same. OCGA § 44-4-3. The surveyor makes out and certifies a plat of the true lines. Id. The processioners file the surveyor's plat and a return of their acts with the probate court. OCGA § 44-4-4. In all boundary disputes, the surveyor's certified plat and the lines so marked "shall be prima facie correct; and the certified plat shall be admissible in evidence without further proof." OCGA § 44-4-3. Landowners dissatisfied with the lines run and marked by the processioners and by the surveyor have 30 days after the return is filed to file a protest with the probate court, which court will then forward the material to the superior court for a trial and adjudication. OCGA § 44-4-9.

*Sacks v. Jordan*, 265 Ga. App. 723, 725 (1) (595 SE2d 571) (2004).

In this case, Hall bought the property at issue in 1998. Before buying, Hall inspected at the front of the property along the road, which was the southern border, and the east and west boundaries along the sides of the property to the first creek, but did not go past there to see the northern boundary because the seller did not know exactly where they were and because the creek bottom was flooded, blocking access to the back of the property. Hall declined to split the cost of a property survey with the seller, although he knew that the property had never been surveyed. Hall paid $800 per acre, and his warranty deed described the property as 86.75 acres, bounded on each side by the properties of various landowners, rather than describing the land more particularly by landmarks, distances, directions, or angles. This property description could be traced back to 1924, the date the first deed concerning this property was ever filed and the only property description ever recorded.

In 2001, the Christian Church camp, which owns property west of Hall, hired Byron Farmer to survey its property. Farmer talked to Hall regarding the boundary line, and Hall agreed that the line

Farmer established was the western boundary of Hall's property, from the road to a creek behind his house, and posted no trespassing signs along it.

Several years later, the property to his north was sold and Hall noticed someone was hunting on what he considered to be his land. The new owner, Carter, claimed that his property line was further south than Hall thought it was, and both men obtained surveys of their property. As Farmer had already surveyed the southern and western boundaries of the Halls' property in the course of surveying neighboring land owned by the church, the Hodges estate, and Standard Sand, Hall and Farmer agreed that those lines would be shown on his plat as previously established and Farmer would not charge him for establishing those lines. Farmer's survey showed Hall's actual acreage to be 75.84 acres, about 11 acres less than the acreage named on Hall's deed, and showed the western boundary as moving to the east as it crossed a creek instead of going straight up as shown in the county tax map. Hall declined to pay for the survey and began researching the records regarding his land and the surrounding land, which led him to conclude that his property actually included approximately 200 acres.

Hall sought a processioning. The processioners walked the land with the county surveyor, examined the deeds and tax records related to the property, and concluded that the lines Farmer drew were correct, with one exception. They determined that Hall's western boundary was straight instead of cutting in toward the east at one end as Farmer had found. The processioners' plat showed that Hall owned 82.50 acres.

Hall protested the processioners' findings, and the issue was tried for five days. Hall presented to the jury as evidence a videotape that showed him walking all of what he contended were the boundary lines and corner markers of his property, as well as numerous plats, tax records, and deeds.

Donald Vinson, the son of previous owner Earl Vinson and grandson of James Vinson, the owner before Earl, testified that his father showed him the property lines and boundary corner markers, which were a large oak and pine in the southwest corner, a stump, a buggy axle in the northeast, and a yellow metal "stob" in the ground near the road in the southeast corner. He showed those markers to Hall on the property. He also testified he had never traveled beyond the creek to the back property line because his father would not let him for fear, he later discovered, he would find his father's moonshine operation. His father told him he had paid taxes on 87 acres, and that, while he knew he owned more acreage than that, he just paid the assessed taxes and did not worry about it. His father never said how many acres he owned. He also testified that the property was fenced

in, which some of the deeds from the 1980s mentioned, and this reference to fencing was a linchpin in Hall's case. Hall showed in his video where parts of old fencing had grown into the trees along what he claimed was his property line. The witness left the property in the late 1960s when he was about 12, and as an heir to his father's estate signed a 1987 deed conveying the property that described it as being 86.75 acres.

Earl Vinson's ex-wife, who lived on the property from 1947 to the late 1960s, testified that her former husband had shown her the property's corner boundary markers when she lived on the land, including a pine and oak in one corner, a cedar post, a poplar stump and axle, and a yellow metal marker. She had not, however, identified these markers physically on Hall's land, nor did she know the total acreage of the property.

In addition to the evidence of the fences and boundary markers, Hall introduced tax deeds from the early 1930s through the 1950s showing that James Vinson, Earl Vinson's father and Donald Vinson's grandfather, owned 50 contiguous acres north and east of a creek on Hall's property, as well as more acreage of an unknown amount further west. In contrast, the processioners' northern line showed Hall owning only a few acres in this location. A 1948 plat that formed the basis of surveys to the north of Hall's property (the Rice plat) showed James Vinson's northern boundary line as 3,141 feet long. Deeds to each of three lots along that line also showed Vinson's boundary as totaling 3,141 feet. By contrast, Farmer's survey and a subsequent survey of this boundary shows the property line as only 1,246.15 feet and in a different location. The Rice plat also showed a lake between two creeks which Hall identified on his property but which Farmer's survey did not show.

Hall also showed that James Vinson owned 100 acres to the east of Hall's property before he acquired the 86.75 acres deeded to him in 1924, but the previous owners of the 100-acre tract were not recorded. The earliest deed to the church's property showed it owned 342 acres, and it sold 30 acres in 1969, but Farmer's survey showed the church as owning 354.25 acres. Hall pointed to numerous other similar discrepancies in the deeds, surveys, and tax records of the surrounding properties and to discrepancies between Farmer's 1998 and 2001 surveys.

Hall hired a surveyor, Robert Lieck, to draw a plat for him based on the corner markers he identified and found. Lieck testified that he did not actually survey the property, but rather plotted the lines according to Hall's instructions. The surveyor included a disclaimer on his plat, stating that "The property lines as shown on this plat were shown to this surveyor by Charles Hall as his property," and the plat showed the Hall property as being more than 204 acres. Another of

Hall's witnesses testified that the buggy axle was actually a corner marker for another piece of property, not for Hall's property. Hall also called as a witness a title abstractor, who traced the deed on the property back to 1924, all of which described the property as 86.75 acres bounded by others' property, as well as examining tax deed and other records and deeds related to this land and the surrounding properties. The abstractor concluded that she could not determine the property's boundary lines.

1. Hall contends that the trial court erred in granting a directed verdict to Carter, his neighbor to the north and upper east. Hall argues on appeal that the court should have allowed him to reopen the evidence to introduce the processioners' plat, which he inadvertently failed to tender before he rested.[1] He also argues that, even without the plat, he presented sufficient evidence to create an issue of fact that the jury should have decided.

After Hall rested, Carter moved for a directed verdict because Hall did not tender the processioners' plat into evidence and did not call the processioners to testify about their findings, arguing that this failure was fatal because the gravamen of Hall's complaint is that the processioners were wrong. To prove they were wrong, Carter argued, Hall first had to show what they found, and he failed to do so. Carter also argued that, even if Hall had tendered the plat, he still failed to present sufficient evidence to establish that his northern boundary line was different from the line established by the processioners and previous surveys. The court granted the directed verdict both because Hall failed to introduce the plat and because Hall's evidence regarding the northern border was insufficient to create an issue of fact.

"If there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." OCGA § 9-11-50 (a). While the trial court may exercise discretion in ruling on a motion to reopen to admit additional evidence, generally the motion should be granted if the evidence would be sufficient to create an issue of fact where none existed otherwise. *Overstreet v. Dixon*, 107 Ga. App. 835, 838 (2) (131 SE2d 580) (1963). In *Overstreet*, the appellant failed to introduce the processioners' plat or testimony in his challenge to the processioning, and the trial court did not allow him to reopen the evidence. This court found that the trial court's refusal to reopen the case "for the admission of evidence which could not have altered the lawful result of the issue" was not harmful error because, even if appellant had tendered the processioners' plat or

---

[1] Hall does not appeal the directed verdict regarding the location of his southern boundary, which fronts a county road. He admitted at trial that he had no claim to property across the road.

testimony, he still would have failed to establish sufficient evidence to create an issue of fact regarding his boundary lines for the jury to consider. Id.

Similarly, in this case, the trial court granted the directed verdict because it found that, even if Hall had tendered the processioners' plat, he still would have failed to present evidence regarding his boundary lines that was sufficient to create an issue of fact for the jury to consider.

A major difficulty in reviewing a trial court's decision in a case such as this is that most of the evidence presented was visual. Hall testified extensively on direct and cross-examination while playing a videotape he made of what he contended were his property lines. While the tape is included in the record on appeal, it is impossible for this court to review the tape in sync with Hall's testimony. Additionally, much of the testimony consisted of witnesses pointing to and identifying locations in various plats and aerial photographs. Again, while those documents are in the record on appeal, this court cannot determine where on the document a witness is pointing. Considering this fact along with the evidence as outlined above, we must affirm the trial court's decision that Hall's evidence was not sufficient to withstand the defendants' motion for a directed verdict as to his northern boundary line. Accordingly, the trial court's refusal to reopen the case for the admission of evidence which could not have altered the result was not harmful error.

2. Hall also contends that the trial court erred in granting the defendants' motion for attorney fees pursuant to OCGA § 9-15-14. The defendants asserted in their motion that "a complete absence of any justiciable issue of law or fact existed" regarding Hall's protest of the processioning plat, and that Hall's claim lacked substantial justification. The trial court awarded the defendants all of the fees requested, $35,005.36, finding under OCGA § 9-15-14 (a) that "[s]uch a complete absence of any justiciable issue of law or fact existed with respect to the plaintiffs' contentions as to the boundaries of their Wilkinson County property that it could not reasonably have been believed by them that a Court would accept their asserted positions." The court also found under OCGA § 9-15-14 (b) that the Halls' boundary claims "lacked substantial justification . . . and also unnecessarily expanded these proceedings."

OCGA § 9-15-14 (a) provides that a trial court shall award attorney fees "to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position." OCGA § 9-15-14 (b) permits a trial court to award attorney fees if it finds that a party brought

an action that lacked substantial justification. "The statute defines 'lacked substantial justification' as 'substantially frivolous, substantially groundless, or substantially vexatious.'" (Footnote omitted.) *DeKalb County v. Adams*, 263 Ga. App. 201, 203 (587 SE2d 302) (2003). "If any evidence exists to support the trial court's grant of the motion [under OCGA § 9-15-14 (a)], we are compelled to affirm." (Citation omitted.) *Trotter v. Summerour*, 273 Ga. App. 263, 264 (1) (614 SE2d 887) (2005). We affirm a trial court's grant of the motion under OCGA § 9-15-14 (b) unless the court has abused its discretion. *Bankhead v. Moss*, 210 Ga. App. 508, 509 (1) (436 SE2d 723) (1993).

In this case,

> [r]eview of the superior court's order under either standard, however, shows that it does not contain the findings necessary to support an award under this Code section. [Cits.] Therefore, this portion of the order of the superior court must be vacated and the case remanded to the superior court for consideration of the issue under the standards of awards pursuant to OCGA § 9-15-14, and to enter an award, if appropriate.

*H. J. Russell & Co. v. Manuel*, 264 Ga. App. 273, 276 (3) (590 SE2d 250) (2003); *Wyatt v. Hertz Claim Mgmt. Corp.*, 236 Ga. App. 292, 293 (2) (511 SE2d 630) (1999).

Further, "in cases involving OCGA § 9-15-14 (a) or (b), the trial court must limit the fees award to those fees incurred because of [the] sanctionable conduct." (Citations and punctuation omitted.) *Trotter v. Summerour*, supra, 273 Ga. App. at 267 (2). In this case, the boundary lines for this piece of property had never been set, and thus requesting a processioning would be the logical way to determine those boundaries in the first place. In its attorney fee order, the trial court did not distinguish which portion of the defendants' attorney fees was spent successfully challenging the western boundary line as set by the processioners. While the jury ultimately found that the western boundary was the line determined by Farmer's survey, some evidence convinced the processioners that Farmer's survey was wrong because they set the line at a different location. Thus a justiciable issue was not completely absent, and Hall's appeal of this finding to the superior court could not completely lack substantial justification.

While Hall's conclusions regarding his boundary lines were not sufficient to withstand a directed verdict as to his northern boundary, his conclusions were not pulled from thin air, but were formed when he pieced together evidence he gleaned from many documents concerning this property and the surrounding property. Many of the

boundaries in this area of the state were not fixed until recently, as for many years only a few people owned relatively large tracts of land, some of which were impassible. Hall presented at least a colorable argument that his predecessors in title owned land as far north and west as he contended, although in the end his evidence was insufficient to withstand a directed verdict for the northern boundary.

Finally, we note that the attorney fee order, prepared by the defendants, stated that Hall's intransigence was evidenced by "the plaintiffs' refusal to relent at the trial of the case when the Court expressly warned that continuing might well result in an award of attorney fees." At trial, what the court actually said during the defendants' motion for directed verdict was:

> Let me say this now, [Hall's attorney]. You know, I've sat here and I've paid attention to this. And the jury has, too. But the only evidence that I've seen clearly in Mr. Hall's favor is what Mr. Hall tells us. . . . So, you know, I'm going to let it proceed at this point as to, I guess, it's [Standard Sand] and the Christian Church. . . . But it's a close call.

This tentative language expressing some concern at trial for Hall's case is a far cry from an express warning that continuing might result in attorney fees.

*Judgment affirmed in part and vacated in part and case remanded with direction. Andrews, P. J., and Bernes, J., concur.*

DECIDED JUNE 28, 2006 —
RECONSIDERATION DENIED JULY 27, 2006 — 

*Bush, Crowley, Leverett & Johnson, Charles M. Leverett, Gambrell & Stolz, Charles M. Cork III,* for appellants.
*Martin Snow, Thomas P. Allen III, Jeffrey L. Grube,* for appellees.