A07A0817. SUNLINK HEALTH SYSTEMS, INC. v. PETTIGREW.
(649 SE2d 532)

SMITH, Presiding Judge.

We granted an application for interlocutory appeal to review the trial court's denial of the defendant's motion for summary judgment in this slip-and-fall action. Vera Pettigrew brought this action against Sunlink Health Systems, Inc., d/b/a Memorial Hospital of Adel ("the hospital"), asserting that she was injured when she slipped and fell while entering the hospital. She alleged negligent design, construction, and maintenance, failure to inspect, and failure to warn regarding the condition of the entrance area. After discovery, the hospital moved for summary judgment. The trial court denied the motion in a one-sentence order and granted a certificate of immediate review.

Because the evidence demonstrates that Pettigrew was not exposed by the hospital to any unreasonable risk of harm, we reverse.

Construed to support the nonmovant, the evidence shows that Pettigrew was an employee of the hospital for 12 years, working as a custodian between 1983 and 1995. On March 5, 2003, she came to the hospital to visit her sister, who was a patient, on a morning when it was "pouring down rain." Pettigrew parked her car and approached the hospital building through the main entrance, the same parking area and entrance that she used while working at the hospital. At the main entrance, a slanted curb or short ramp leads up from a circular driveway to the area in front of the doors. While the photograph of the entrance shows what appears to be an awning or roof shading the doorway, it is also apparent that the area is open to the elements.

As Pettigrew approached the entrance and after she negotiated the curb, she noticed an older man having difficulty opening the door. She stepped around him to open the door for him, and as she did so her "foot slipped out from under" her. Because she was concerned about the man, she "didn't pay attention to the area if it was wet. . . . I didn't even look down." She testified that she believed it was the "wet concrete" that caused her to fall. Pettigrew never testified that any sloping surface or the configuration of the entrance caused her to fall. Instead, she testified that the concrete was very slippery, and she believed this was caused by the rain and the air from inside the doors coming in contact with the concrete.[1]

The evidence demonstrates that Pettigrew was actually opening the entrance door when she fell. She testified that she had already negotiated the curb and had stepped around the man who was struggling with the door in order to open it for him. Moreover, she marked a photograph of the entrance with an "x" to show a location near the door, on the flat concrete surface, as the place her feet were located when she slipped. She also acknowledged that she was familiar with the entrance area, that the concrete outside the door was often wet because of the rain, and that when it rains "sometimes when we go in . . . it [is] slippery inside too."

After a break and under further questioning from her attorney, Pettigrew testified that she was standing on a slanted curb when she fell. After she testified that her foot was on the slanted curb, however,

---

[1] The dissent asserts that Pettigrew testified that she slipped in condensation, but this was not her testimony. Nor does Pettigrew argue this on appeal; she acknowledges repeatedly in her brief that the rain was the cause of her fall. Pettigrew speculated during her deposition that some dampness may have been present because air came out of the door and "hit that concrete," because it was "slippery inside too," but her initial response was "from the rain." Nor did Pettigrew present any testimony that interior air would produce condensation on the pavement on a dry day, independent of a heavy rain, or that the hospital had knowledge of such a phenomenon.

she again testified that she was standing on flat concrete next to the door at the time her foot slipped, where the concrete was "sort of flat" or "flat."

Applying the rule stated in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (1) (343 SE2d 680) (1986), we are required to construe Pettigrew's contradictory testimony most strongly against her. "It is well established that on summary judgment a party's self-contradictory testimony, if unexplained, must be construed against the party-witness, even when the party-witness is the respondent rather than the movant. [Cit.]" *Walker v. Brannan*, 243 Ga. App. 235, 237 (533 SE2d 129) (2000). Construing Pettigrew's testimony in this fashion, we conclude that she was standing on a flat surface when her foot slipped on wet concrete. The curb or ramp therefore was not a causative factor in her fall, and any testimony with regard to the configuration of the ramp or the entrance area is irrelevant.[2]

The evidence therefore demonstrates that Pettigrew's fall was caused by the accumulation of rainwater on the flat concrete entrance walkway, and she is charged with equal knowledge of this fact on a day of heavy rain.

> In premises liability cases, proof of a fall, without more, does not give rise to liability on the part of a proprietor. The true basis of a proprietor's liability for personal injury to an invitee is the proprietor's superior knowledge of a condition that may expose the invitees to an *unreasonable risk* of harm. Recovery is allowed only when the proprietor had knowledge and the invitee did not.
>
> Under Georgia law, a slippery condition caused solely by rainwater is not a hazard because it presents no unreasonable risk of harm. As we recently noted, it is common knowledge that water accumulates on the ground on rainy days, and the risk of harm imposed by this accumulation is not unreasonable but is one to which all who go out on a rainy day may be exposed and which all may expect or anticipate.

(Citations, punctuation and footnotes omitted.) *Emory Univ. v. Smith*, 260 Ga. App. 900, 901-902 (581 SE2d 405) (2003). "[P]laintiffs in rainy day slip and fall cases are charged with equal knowledge that water

---

[2] We note Pettigrew's testimony that the configuration of the concrete at the entrance had been changed two or three weeks after her fall and before the photograph was taken, so that the curb or ramp was closer to the doors at the time of her fall. But this testimony is immaterial in light of her testimony, as construed under *Prophecy*, that she was standing on a flat concrete surface when she slipped.

is apt to be found in any area frequented by people coming in from the rain outside." (Citation and punctuation omitted.) Id. at 902, n. 5.

Here, Pettigrew approached the doors of the hospital while she knew that it was "pouring down rain." She also knew that water would accumulate around the entrance on rainy days. She therefore was charged with equal knowledge that water was likely to be present on the concrete at the entrance doors as people moved in and out of the hospital. Pettigrew therefore presented no evidence that the hospital exposed her to any unreasonable risk of harm.

The dissent contends that Pettigrew's explanation of what she was doing when she fell creates a fact issue for jury determination. This appears to be a variant of the distraction argument raised by Pettigrew in her brief. But the distraction doctrine is simply inapplicable here, because for it to apply the distraction must be created by the owner or occupier of the land. *Robinson v. Kroger Co.*, 268 Ga. 735, 746 (2) (b) (493 SE2d 403) (1997). The "older man" that Pettigrew stepped around to open the door was never identified, and no evidence was presented that he was a patient or infirm. Nor was evidence presented that Pettigrew's voluntary decision to step around him to open the door was created by the hospital or within its knowledge.

The dissent also contends that we can conclude from the evidence that "after she negotiated the curb, Pettigrew stepped backward . . . and was no longer standing on a flat surface when she fell." This conclusion *cannot* be inferred from the evidence before us, because Pettigrew testified that both of her feet were on the flat surface of the entrance when she slipped. Drawing an inference contrary to the plaintiff's own testimony would eviscerate the *Prophecy* rule and turn it on its head. This we cannot do.

In sum, Pettigrew testified that the rain, not any sloping surface, caused her fall. She is charged with equal knowledge of rainy day conditions, particularly at an entrance that she negotiated daily for 12 years and that she was aware became slippery when wet. Because Pettigrew presented no evidence that the hospital exposed her to any unreasonable risk of harm, we reverse the trial court's denial of summary judgment.

*Judgment reversed. Andrews, P. J., Johnson, P. J., Ellington and Adams, JJ., concur. Barnes, C. J., and Miller, J., dissent.*

BARNES, Chief Judge, dissenting.

Because the evidence could be construed in the plaintiff-respondent's favor, and must be according to our law, I respectfully dissent from the majority opinion. Pettigrew's testimony regarding the location of her fall is not a model of clarity, as much of it is given while she and the lawyers examine and mark color photographs with colored pens. It is often difficult, if not impossible, to follow written

testimony that describes spatial relationships by pointing to a photograph, as was done in this case.[3]

Pettigrew had worked at Adel Memorial Hospital for 12 years, but left the job in 1995, because she anticipated that the hospital was going to lay off its older employees. In March 2003, she went to visit her sister in the hospital. She parked and walked up the right side of the circular driveway to the front entrance, which had a "drive-thru [sic] cover." She saw an older man having a hard time trying to open the front door, so she "stepped around him to open it." Her foot slipped out from under her and she broke her ankle. During her deposition, Pettigrew marked an X on the photograph, highlighted in yellow, to show where the older man was standing and a red X to show where her feet were when she slipped. Both marks were made on a black rug at the entryway, which had not been there when she fell. Those marks do not show up well in the photocopied photograph in the record. Pettigrew answered yes when defense counsel asked, presumably while pointing at a picture, "So you had already gone over this step *here*, the ramp," and "You were already up *here* on the concrete about to open the door when you slipped." (Emphasis supplied.) Defense counsel asked Pettigrew nothing about the configuration of the ramp itself.

Pettigrew's lawyer began his direct examination by asking her to describe the ramp. She said it was "sort of split like a slanted split into the ramp . . . like slanted curb. . . ." When she stepped around the man to help him with the door, her foot slipped. She marked the picture to show her recollection of the entryway, explaining, "It was *like this*. As far as — it was sort of slanted down *like that*." (Emphasis supplied.) On cross-examination, continuing to illustrate the questions and answers by referring to the picture, Pettigrew said it was flat where the red dot representing her foot was located, but there was a slant off to the right. Then the following exchange took place:

Q. Where this line here on the right side, this short line, is that where the slant started this way or was it slanted at that point?
A. It was slanted, sort of slanted this way.
Q. Was this flat where the red dot is?
A. Yes.
Q. Or was it on the slant?
A. It was sort of flat.

---

[3] "[W]hile those documents are in the record on appeal, this court cannot determine where on the document a witness is pointing." *Hall v. Christian Church of Ga.*, 280 Ga. App. 721, 726 (1) (634 SE2d 793) (2006).

Q. So it was flat there but there [is] a slant off to the right.
A. There [were] slants off to the left and the right.
Q. This slant — was this a slant going down here or was this really just a slant going off this way to the right — I mean to the left?
A. The slant going off — but I was over here on this slant going to the right.

Pettigrew had come up the right slant, "and stepped *there* around [the older man] to open the door. When I opened the door, my foot slipped up on *that* square part." (Emphasis supplied.)

From this exchange, along with Pettigrew's earlier testimony that she had already negotiated the curb and the marked, photocopied pictures, the majority concludes Pettigrew contradicted herself about whether she was on a flat surface or a slanted surface when she fell. However, "for purposes of summary judgment, we must construe the evidence in [Pettigrew's] favor." *Edwards v. Ingles Market*, 234 Ga. App. 66, 67 (1) (506 SE2d 205) (1998). Construing this testimony against the party who moved for summary judgment, one could conclude from the record that Pettigrew came up a slanted surface to the right of the door, then stepped onto a flat surface to assist the older man with the door before she fell. One could also conclude that after she negotiated the curb, Pettigrew stepped backward to assist the older man with the door, and was no longer standing on a flat surface when she fell. Therefore we need not apply the *Prophecy* rule to disregard any of Pettigrew's statements.

Further, I cannot agree that Pettigrew's testimony regarding how the entryway in a photograph differed from the entryway when she fell was an "attempt to change her testimony with regard to the configuration of the curb or ramp." When defense counsel first showed her a set of photographs, Pettigrew said they looked "familiar" but immediately noted that the warning to "Watch Your Step" had not been there when she fell. Also, "the yellow strip wasn't down there. It was just like a slant, like going up to the door." Counsel did not explore what Pettigrew meant about "the slant . . . going up to the door," but asked what else was different. Pettigrew said the rugs had not been there, and rather than exploring any further differences in the entryway, counsel proceeded to ask Pettigrew which direction she had been going. He never returned to the photographs or the configuration of the ramp, and he never asked Pettigrew to confirm that no other differences existed between the entrance as depicted in the photographs and as it was when she fell. Again construing the evidence in favor of respondent Pettigrew, no inconsistency exists requiring us to apply the *Prophecy* rule to disregard Pettigrew's testimony about the entryway.

The issue in this slip-and-fall case is whether, taking into account all of the circumstances existing at the time and place of the fall, the invitee exercised the prudence that an ordinarily careful person would use in this situation. Pettigrew did not slip in a puddle of rain at the covered entryway. She contends that she fell because moisture had condensed on the bare concrete (slanted or not), making the concrete slippery, and because she was helping an older man who was struggling with the front door, as an ordinarily reasonable person would do. "The invitee is not bound to avoid hazards not usually present on the premises and which the invitee, exercising ordinary care, did not observe, and the invitee is not required, in all circumstances, to look continuously at the floor, without intermission, for defects in the floor." (Citations omitted.) *Robinson v. Kroger Co.*, 268 Ga. 735, 741 (1) (493 SE2d 403) (1997). A jury question exists as to whether Pettigrew failed to exercise ordinary care by not keeping her eyes on the ground at all times. Her explanation as to what she was doing when she fell creates a fact issue for jury determination, and constitutes some evidence that Pettigrew exercised reasonable care for her own safety in entering the hospital. *McDonald's Restaurant &c. v. Banks*, 219 Ga. App. 667 (466 SE2d 240) (1995).

Further, "[g]iven that defendant used the ramp continuously, it can be inferred that defendant had actual or constructive knowledge" that the concrete was bare. *Flournoy v. Hosp. Auth. of Houston County*, 232 Ga. App. 791, 792 (504 SE2d 198) (1998). The danger allegedly posed by the entryway resulted from a combination of the moist bare concrete, the slope of the ramp, and the presence of an elderly man having trouble opening the door. "It cannot be said as a matter of law that an individual using the ramp would have appreciated the danger posed by the combination of these elements." Id. at 793.

Finally, while we have held that a plaintiff could not recover when she slipped on a wet ramp at a hospital entryway, in that case, "[t]he record shows only that she stepped on a wet ramp." (Footnote omitted.) *Emory Univ. v. Smith*, 260 Ga. App. 900, 902 (581 SE2d 405) (2003). In this case, the record shows much more than that.

For these reasons, the trial court properly denied the hospital's motion for summary judgment. Thus, I must respectfully dissent from the majority opinion.

I am authorized to state that Judge Miller joins in this dissent.

DECIDED JULY 5, 2007.

*Hall, Booth, Smith & Slover, Thomas M. Burke, Jr.*, for appellant.

*Farrar & Hennesy, Douglass K. Farrar*, for appellee.