## A08A0683. LAVOI CORPORATION, INC. v. NATIONAL FIRE INSURANCE OF HARTFORD et al.

(666 SE2d 387)

MIKELL, Judge.

Lavoi Corporation d/b/a EPI Breads ("Lavoi") filed an action against National Fire Insurance of Hartford, Continental Casualty Company (both insurance companies are collectively referred to herein as "CNA"), and Robert Holman, alleging that the insurers acted in bad faith when they failed to indemnify Lavoi for two separate losses and that Holman, as Lavoi's insurance agent, failed to obtain proper and adequate insurance. The first loss occurred on January 13, 2005, when a fire destroyed Lavoi's facility in Dallas, Texas, that was scheduled to open the following month. The other loss arose out of a lawsuit filed by Mihyung USA, Inc., the owner of a sandwich shop, which alleged that Lavoi had provided it with contaminated bread (the "Mihyung claim"). CNA denied coverage on the Mihyung claim, which Lavoi ultimately settled for $5,000.

---

[7] OCGA § 53-5-25 (c); see *Freeman v. Covington*, 282 Ga. App. 113, 116 (637 SE2d 815) (2006).

CNA filed a motion for partial summary judgment on Lavoi's claim for extra expense and bad faith, which the trial court granted. Lavoi and CNA filed cross-motions for partial summary judgment on the issue of CNA's duty to defend Lavoi against the Mihyung claim. The trial court granted CNA's motion and denied Lavoi's. Holman filed a motion for summary judgment on Lavoi's claims for breach of contract and negligence, which the trial court also granted. Lavoi appeals all adverse rulings on the motions, and we affirm.

"We review the grant or denial of a motion for summary judgment de novo."[1]

> Summary judgment is appropriate when the court, viewing all the evidence and drawing reasonable inferences in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case. The burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[2]

1. *Grant of CNA's Motion for Partial Summary Judgment on Lavoi's Claim for Extra Expense and Bad Faith.*

(a) *Extra Expense.* Lavoi is a commercial baker and has its principal place of business in DeKalb County, Atlanta, Georgia. On January 13, 2005, a fire occurred at Lavoi's baking plant in Dallas, Texas, that was scheduled to open the following month.[3] At that time, Lavoi had a commercial insurance policy with CNA, Policy Number C 1076461821, for a policy period beginning on May 13, 2004, and expiring on May 13, 2005, which provided various types of coverage for each of Lavoi's facilities, including Atlanta, Tempe, and Dallas.

According to appellee Holman, his insurance agency, Holman and Company, first obtained insurance for Lavoi from CNA in 2002. Holman deposed that Lavoi obtained several different types of coverage for its Atlanta facility, including coverage for improvements and betterments, business personal property, stock, and business income and extra expense ("BI/EE"). For the Dallas location, how-

---

[1] (Footnote omitted.) *Allstate Ins. Co. v. Sutton*, 290 Ga. App. 154 (658 SE2d 909) (2008).

[2] (Footnote omitted.) *King v. Chism*, 279 Ga. App. 712, 713 (632 SE2d 463) (2006).

[3] The fire department concluded that the fire was caused by a spark from a welder, which ignited polyurethane foam insulation in one of the rooms.

ever, Lavoi did not obtain BI/EE coverage because when the coverage was obtained, the Dallas plant had not yet been converted to a bakery. Holman deposed that prior to the May 13, 2004, renewal date, he informed Lavoi's chief financial officer, Mercer Granade, that the limit of insurance for the building that housed the Dallas plant should be increased to $3,000,000 from $1,400,000 based on the valuation report on the building, and Granade agreed. Therefore, as of the renewal date, the Dallas building moved from the commercial property form of coverage to the builder's risk form, which did not offer BI/EE.

Granade was Lavoi's chief financial officer from February 2004 to May 2005. During his deposition, Granade reviewed the policy and deposed that the Atlanta location had BI/EE coverage; that the Tempe, Arizona location also had BI/EE coverage; but that the Dallas plant did not have BI/EE coverage. Granade further deposed that there was no need for business income coverage for the Dallas plant before it opened for production. Granade informed Holman that they would revisit this type of coverage once the Dallas plant became operational. Until that time, however, the coverage placed on the Dallas facility was builder's risk coverage.

After the fire, Lavoi's Atlanta and Tempe facilities produced the goods necessary to meet the demands of the clients that would have been serviced by the Dallas plant. According to Granade, Lavoi's position was that the BI/EE coverage under the policy should have covered the costs incurred at the Atlanta and Tempe facilities to meet those demands. Granade explained that Lavoi incurred excess freight charges to ship the product to the Dallas clients and excess overtime because it had to employ workers at the Atlanta and Tempe plants to make the product.

On September 23, 2005, Lavoi submitted a bad faith demand to CNA, requesting, among other things, payment of $308,000 for equipment and approximately $740,000 in extra expenses under the BI/EE coverage. On January 19, 2006, Lavoi submitted its "Sworn Statement and Proof of Loss" to CNA, which reflected that the value of the loss and damage was $3,716,000 and that partial payment had been made by CNA in the amount of $1,795,000, leaving a remaining claim amount of $1,921,000. Lavoi later submitted a supplemental proof of loss, which showed a claim for extra expenses totaling $747,511.34 and for the same equipment referenced in the bad faith demand in the amount of $322,430; both amounts were higher than that included in the bad faith demand. CNA contends that it was not required to pay Lavoi more than the $1,795,000 it paid for the losses caused by the fire. Further, because there was no BI/EE coverage on the Dallas facility, CNA argues that Lavoi is not entitled to recover on that claim.

"Where an insurance contract provision is clear and unambiguous, its interpretation is a matter for the court."[4]

> Under Georgia law, contracts of insurance are interpreted by ordinary rules of contract construction. Where the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent. The contract is to be considered as a whole and each provision is to be given effect and interpreted so as to harmonize with the others.[5]

But courts "will not strain to extend coverage where none was contracted or intended."[6]

We agree with the trial court that the language of the contract is clear and unambiguous. According to the policy, business income coverage applies to the actual loss of business income sustained

> due to the necessary suspension of your "operations" during the "period of restoration" [where t]he suspension [is] caused by "direct physical loss of or damage to property" . . . *at premises that are described in the Declarations and for which a Business Income Limit of insurance is shown in the Declarations.*

(Emphasis supplied.) It also defines "extra expense" as "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." The declaration page of the policy shows clearly and unambiguously that Lavoi purchased BI/EE coverage for the Atlanta and Tempe properties, not the Dallas facility. The policy is clear that the coverage applies in the event of loss or damage to the property at the premises described in the Declarations. Therefore, the trial court's conclusion that Lavoi could not recover damages for expenses incurred at the Atlanta and Tempe premises to supply the product that could not be provided by the Dallas plant due to the fire was correct. Accordingly, summary judgment in CNA's favor on this issue is affirmed.

---

[4] (Citation and punctuation omitted.) *Kay-Lex Co. v. Essex Ins. Co.*, 286 Ga. App. 484, 487 (649 SE2d 602) (2007).

[5] (Punctuation omitted.) *Fireman's Fund Ins. Co. v. Univ. of Ga. Athletic Assn.*, 288 Ga. App. 355, 356 (654 SE2d 207) (2007), citing *Boardman Petroleum v. Federated Mut. Ins. Co.*, 269 Ga. 326, 327-328 (498 SE2d 492) (1998).

[6] (Citation omitted.) *Jefferson Ins. Co. v. Dunn*, 269 Ga. 213, 216 (496 SE2d 696) (1998).

(b) *Bad Faith*.

To prevail on a claim for an insurer's bad faith under OCGA § 33-4-6,[7] the insured must prove: (1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith. Since the statute imposes a penalty, its requirements are strictly construed. Consequently, a proper demand for payment is essential to recovery.[8]

Lavoi did not submit a proper demand for payment. "It has long been the law that in order to serve as a bad faith demand, the demand must be made at a time when immediate payment is due."[9] The demand "is not in order if the insurer has additional time left under the terms of the insurance policy in which to investigate or adjust the loss and therefore has no legal duty to pay at the time the demand is made."[10] CNA's policy provides as follows: "[w]e will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and (1) [w]e have reached agreement with you on the amount of loss; or (2) [a]n appraisal award has been made." Here, Lavoi submitted its bad faith demand on September 23, 2005, but did not submit its sworn proof of loss until January 19, 2006, then supplemented the proof of loss at a later time. Therefore, at the time the bad faith demand was submitted in September 2005, immediate payment was not due because Lavoi had not complied with the prerequisites under the policy.[11] Accordingly, the demand for payment was improper, and the trial court correctly determined that

---

[7] OCGA § 33-4-6 (a) provides that
[i]n the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.

[8] (Citations omitted.) *BayRock Mtg. Corp. v. Chicago Title Ins. Co.*, 286 Ga. App. 18, 19 (648 SE2d 433) (2007).

[9] (Citations omitted.) *Primerica Life Ins. Co. v. Humfleet*, 217 Ga. App. 770, 772 (1) (458 SE2d 908) (1995).

[10] (Citation omitted.) *Dixie Constr. Products v. WMH, Inc.*, 179 Ga. App. 658 (1) (347 SE2d 303) (1986).

[11] See *Cagle v. State Farm Fire &c. Co.*, 236 Ga. App. 726, 727, n. 2 (512 SE2d 717) (1999) (bad faith demand was not proper where loss was not payable for 60 days after proof of loss was submitted).

summary judgment in CNA's favor on Lavoi's demand for bad faith damages was appropriate.

In its appellate brief, Lavoi raises five separate enumerations that attack the trial court's conclusion that it was not entitled to bad faith damages. The "grant of summary judgment[, however,] must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not the analysis employed."[12] Accordingly, we affirm the grant of summary judgment to CNA on Lavoi's bad faith claim because it was right for the reason discussed above, which was argued by CNA on summary judgment and on appeal.[13]

2. *Grant of Holman's Motion for Summary Judgment.*

Lavoi alleged that Holman breached his contract with Lavoi and negligently failed to provide coverage for costs incurred in Atlanta and Tempe due to the fire in Dallas. In its appellate brief, Lavoi contends that should the Court find, as we did in Division 1, that the policy did not provide coverage for "extra expense" incurred in Atlanta and Tempe, then Holman should be found liable for the "extra expense" losses due to his failure to obtain proper coverage. We disagree.

> Generally speaking, an insurance agent who undertakes to procure a policy of insurance for his principal but negligently fails to do so may be held liable to the principal for any resulting loss. However, where the agent does procure the requested policy and the insured fails to read it to determine which particular risks are covered and which are excluded, the agent is thereby insulated from liability, even though he may have undertaken to obtain "full coverage."[14]

An exception to the rule applies, relieving the insured of the responsibility to scrutinize the policy to determine if the required coverage was included within its terms,

> where the agent, acting in a fiduciary relationship with the insured, holds himself out as an expert in the field of insurance and performs expert services on [the insured's behalf such that] the insured must rely upon the [agent's

---

[12] (Citation and punctuation omitted.) *La Quinta Inns v. Leech*, 289 Ga. App. 812, 819 (2) (658 SE2d 637) (2008).

[13] See *Postnieks v. Chick-fil-A*, 285 Ga. App. 724, 727 (2) (647 SE2d 281) (2007).

[14] (Citations omitted.) *Atlanta Women's Club v. Washburne*, 207 Ga. App. 3, 4 (427 SE2d 18) (1992).

expertise] to identify and procure the correct amount or type of insurance.[15]

These rules do not require us to reverse the trial court's grant of summary judgment to Holman.

In the case sub judice, the pertinent issue is related to the actual terms of the policy, rather than what insurance Holman procured. We point out that Lavoi's argument is not that Holman failed to procure the necessary coverage for the Dallas plant but that the Atlanta and Tempe plants should have had coverage in place to cover expenses incurred to meet the demands required of the Dallas plant. Both the Atlanta and Tempe plants were covered by policies that included coverage for "extra expense." However, according to the policy, any extra expense incurred must have been incurred during the "period of restoration" that followed direct physical loss or damage to property at the facility for which the coverage was purchased. Had Lavoi been under the impression that the extra expense coverage applied to all of the facilities, there would have been no need to obtain different limits of "extra expense" coverage for the Atlanta and Tempe plants, as coverage at one plant should have covered them all. Instead, the evidence shows that the coverage limits for BI/EE coverage was $4,800,000 for the Atlanta plant and $2,000,000 for the Tempe plant. Additionally, Holman could not have procured this type of coverage for the Dallas facility until it become operational, which Lavoi's chief financial officer understood as he testified that there was no need for that type of coverage prior to the opening of the facility.

In support of its argument that Holman was negligent, Lavoi relies on *Jim Anderson & Co. v. ParTraining Corp.*,[16] in which we affirmed the trial court's denial of the insurance agent's motion for summary judgment on the ground that an issue of material fact existed regarding whether ParTraining, through its president, relied on the agent to provide expertise or exercise discretion in seeking to procure business interruption coverage.[17] In *ParTraining*, the agent had discretion to adjust the policies, and even to change insurance policies without informing the company president.[18] *ParTraining* is distinguishable from the instant case, however, because in that case, the company president testified that he asked for business interruption coverage and did not learn that the coverage was not included

---

[15] (Citations and punctuation omitted.) Id. at 4-5. See also *Wright Body Works v. Columbus Interstate Ins. Agency*, 233 Ga. 268, 271 (210 SE2d 801) (1974).

[16] 216 Ga. App. 344 (454 SE2d 210) (1995).

[17] Id. at 345 (1).

[18] Id.

until after a fire destroyed the company's building.[19] Here, the chief financial officer testified that there was no need to purchase BI/EE coverage for the Dallas location so there was no expectation or reliance on Holman that the coverage had been included in the policy.

On the third page of the Declarations, entitled "Additional Coverages," the policy expressly states as follows:

> The coverages below are provided at each location under the following coverage forms for up to the Limit of Insurance shown. If a different limit for these additional coverages is otherwise noted on the Schedule of Locations and Coverages, that limit will apply for the specific location indicated.

Nonetheless, Lavoi states that Granade, whom it refers to as its "risk manager" in its appellate brief, understood that the policy provided "extra expense" coverage for the Atlanta and Tempe facilities but that it was not readily apparent on the face of the policy that the policy would not cover costs incurred in Atlanta and Tempe due to the fire in Dallas. The policy belies this contention.

The insured has a duty to read and examine the policy where its examination "would have made it 'readily apparent' that the coverage requested was not issued."[20] In this case, it was readily apparent that there was no BI/EE coverage for the Dallas location and that the extra expense coverage for the Atlanta and Tempe locations covered only losses sustained at those facilities. Therefore, we reject Lavoi's argument, and we affirm the trial court's grant of summary judgment to Holman.

3. *Grant of Partial Summary Judgment to CNA and Denial of Partial Summary Judgment to Lavoi on Mihyung Claim.*

(a) *Duty to Defend.* The Mihyung claim involves the issue of CNA's duty to defend Lavoi in a separate lawsuit filed by Mihyung. Mihyung filed a lawsuit against Lavoi, alleging that it provided contaminated breads to Mihyung for use in a franchise restaurant that was owned and operated by Mihyung. Mihyung asserted several causes of action against Lavoi, including breach of the warranties of merchantability, wholesomeness, and purity, strict liability for a manufacturing defect, violation of the Deceptive Trade Practices-Consumer Protection Act, tortious interference with prospective business relations, and violation of federal anti-trust laws, including

---

[19] Id. at 344.
[20] (Citation omitted.) Id. at 345 (2).

the Robinson-Patman Act and the Sherman Act. Mihyung sought economic damages, statutory damages, exemplary and punitive damages, attorney fees, costs, and pre-judgment and post-judgment interest.

Michael Alford, the claim specialist employed by CNA who was assigned to the Mihyung claim, deposed that CNA received notice of the Mihyung claim on or about August 30, 2005, when it was reported electronically. On September 6, 2005, Alford sent a letter to Lavoi, which purportedly attached the Commercial General Liability policy that Lavoi had in place with CNA. In that letter, Alford indicated that "exclusion m. on page 6 [was] noted" and that he would notify Lavoi of the final coverage analysis upon its completion. Alford deposed that on September 8, 2005, he was instructed to deny the claim and to prepare a denial letter to submit to CNA's coverage committee for review. Alford sent the letter to Lavoi on September 16, 2005, informing Lavoi that CNA disclaimed coverage on the Mihyung claim and would not provide defense counsel or file an answer on Lavoi's behalf. The letter set forth the relevant terms of the policy as follows:

> SECTION I - COVERAGES[.] Coverage A Bodily Injury and Property Damage Liability[.] 1. Insuring Agreement[.] a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> 2. Exclusions. This insurance does not apply to k. Damage To Your Product. "Property damage" to "your product" arising out of it or any part of it. *m. Damage to Impaired Property Or Property Not Physically Injured[.] "Property damage" to "impaired property" or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"*;[21] *or (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.*

---

[21] (Emphasis supplied.)

SECTION V. DEFINITIONS[.] 3. "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. 8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because: a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or b. You have failed to fulfill the terms of a contract or agreement. . . . 17. "Property Damage" means: a. Physical injury to tangible property, including all resulting loss of use of that property. . . . or b. Loss of use of tangible property that is not physically injured. 21. "Your product": a. Means: (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (a) You; . . . (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products. b. Includes: (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; . . . 22. "Your work": a. Means: (1) Work or operations performed by you or on your behalf.

The letter provided that exclusion m. applied to damages caused due to defective and contaminated bread and that the remaining claims set forth in Mihyung's complaint did not constitute an occurrence, property damage, or bodily injury as defined in the policy. The policy defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Lavoi retained its own counsel, incurring more than $46,000 in attorney fees, and ultimately settled the case for $5,000.

"[T]he duty to defend is determined by the contract; and since the contract obligates the insurer to defend claims asserting liability under the policy; even if groundless, the allegations of the complaint against the insured are looked to to determine whether a liability covered by the policy *is asserted*."[22]

[T]he correctness of an insurer's decision to defend or not cannot be determined by "later-revealed facts" of which the insurer has no knowledge or notice. Under the later-revealed facts doctrine, even if an insurer justifiably refused to defend a case based on the information it had at the

---

[22] (Citations and punctuation omitted; emphasis in original.) *Penn-America Ins. Co. v. Disabled American Veterans*, 268 Ga. 564, 565 (490 SE2d 374) (1997).

outset, it would have to monitor the case throughout to be sure that its duty did not arise later. Such a burden would be intolerable.[23]

Citing *Penn-America*,[24] Lavoi reminds us that "the insurer is obligated to defend where . . . the allegations of the complaint against the insured are ambiguous or incomplete with respect to the issue of insurance coverage"[25] and that even in the face of "potential" coverage, "doubt as to liability and insurer's duty to defend should be resolved in favor of the insured."[26] Lavoi argues in its brief that Mihyung might have been able to prove that the tainted bread contaminated the sandwiches, which had to be destroyed, causing "property damage" to Mihyung and "bodily injury" to Mihyung's customers.

We do not find the allegations of the complaint to be ambiguous or incomplete. There is no allegation in the complaint that any of Mihyung's customers sustained bodily injury, so that part of Lavoi's argument fails. The argument that the contaminated bread caused Lavoi property damage also fails. Arguably, under the policy, the definition of "impaired property" includes the sandwiches that Lavoi contends that Mihyung discarded due to the contaminated bread. The policy defines "impaired property" as tangible property other than Lavoi's product or work that could not be used or became less useful because it incorporated Lavoi's product, or work that was known or thought to be defective, deficient, inadequate, or dangerous. Most importantly, however, is the fact that exclusion m. specifically provides that the policy does not cover property damage to impaired property arising out of "a defect, deficiency, inadequacy or dangerous condition" in Lavoi's product or work. The trial court points out that the complaint did not include assertions that Mihyung suffered damage to its property in the form of damaged or returned sandwiches. The salient point, however, is that even had the complaint included such allegations, the damages would not have been covered pursuant to exclusion m.[27] Therefore, the trial court's grant of summary judgment to CNA on its duty to defend the Mihyung claim is correct.

(b) *Bad Faith.*

As discussed in Division 1 (b), in order to prevail on a claim for

---

[23] *Great American Ins. Co. v. McKemie*, 244 Ga. 84, 85 (259 SE2d 39) (1979).

[24] Supra.

[25] *Penn-America*, supra at 565.

[26] (Citation omitted.) Id. at 566.

[27] See *Batson-Cook Co. v. Aetna Ins. Co.*, 200 Ga. App. 571, 574 (409 SE2d 41) (1991) (no duty to defend where damages alleged excluded by the policy).

an insurer's bad faith under OCGA § 33-4-6,[28] "the insured must prove: (1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith."[29] Pretermitting the issue of whether Lavoi's demands for defense counsel were premature under OCGA § 33-4-6 as argued by CNA, the fact remains that "[w]here the . . . insurer has reasonable grounds to contest the claim, no penalty should be permitted."[30] In light of our conclusion that Mihyung's claim was not covered by the policy, CNA clearly had reasonable grounds to contest the claim. Accordingly, the trial court's grant of summary judgment to CNA on Lavoi's bad faith claim made in connection with the Mihyung claim was proper.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED JUNE 20, 2008 —
RECONSIDERATION DENIED JULY 31, 2008 — 

*Kilpatrick Stockton, Adria L. Perez, James J. Leonard, Jr.*, for appellant.

*Hall, Booth, Smith & Slover, Jack G. Slover, Jr., Kenneth D. Jones, Carlock, Copeland, Semler & Stair, David F. Root, Ann H. Bracco, Ambadas B. Joshi*, for appellees.

---

[28] See n. 7, supra.

[29] *BayRock Mtg. Corp.*, supra at 19.

[30] (Citation and punctuation omitted.) *Grange Mut. Cas. Co. v. Law*, 223 Ga. App. 748, 750 (2) (479 SE2d 357) (1996). See also *Roland v. Ga. Farm Bureau Mut. Ins. Co.*, 265 Ga. 776, 778 (2) (462 SE2d 623) (1995) (insurer cannot be held liable for a penalty based on bad faith refusal to pay or for attorney fees where it has reasonable grounds to contest the claim).