EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Consejo de Titulares de 76 Kings Court Condominium<br><br>Apelante<br><br>v.<br><br>MAPFRE PRAICO Insurance Company<br><br>Apelada | 2022 TSPR 32<br><br>208 DPR \_\_\_\_ |

Número del Caso:  AC-2020-103


Fecha: 24 de marzo de 2022


Tribunal de Apelaciones:

    Panel VIII


Abogados de la parte apelante:

    Lcda. Aura A. Montes Rodríguez
    Lcdo. Alejandro J. García Carballo


Abogada de la parte apelada:

    Lcda. Claudia Juan García


Materia:  Derecho de Seguros- El requisito de notificación previa dispuesto en el Art. 27.164 del Código de Seguros de Puerto Rico y los términos relacionados con este son de carácter jurisdiccional.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Consejo de Titulares de
76 Kings Court Condominium

      Apelante

       v.                    AC-2020-103     Apelación

MAPFRE PRAICO Insurance Company

      Apelada

El Juez Asociado Señor Feliberti Cintrón emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 24 de marzo de 2022.

Hoy tenemos la oportunidad de evaluar la naturaleza del requisito de notificación previa, dispuesto en el Art. 27.164 del Código de Seguros de Puerto Rico, 26 LPRA sec. 2716d, como condición necesaria para la presentación de una demanda en contra de una aseguradora por presuntamente incurrir en actos contrarios al Código de Seguros. Específicamente, nos corresponde determinar si tal requisito, así como los términos relacionados con éste, son de naturaleza jurisdiccional.

Luego de estudiar detenidamente el texto legal pertinente y la intención legislativa detrás de su aprobación, resolvemos que el requisito de notificación

previa establecido en el citado Art. 27.164 del Código de Seguros, *supra*, así como los términos relacionados con éste, son de carácter jurisdiccional.

I

El 4 de septiembre de 2019, el Consejo de Titulares del Condominio 76 Kings Court (Consejo de Titulares) presentó ante el Tribunal de Primera Instancia una *Demanda* en contra de su aseguradora, MAPFRE PRAICO Insurance Company (MAPFRE o aseguradora). En síntesis, alegó que MAPFRE no investigó ni ajustó adecuadamente una reclamación que hizo el Consejo de Titulares, como asegurado, por los daños sufridos en el condominio tras el paso de los huracanes Irma y María. En particular, el Consejo de Titulares sostuvo que la aseguradora incumplió el contrato de seguros que cobijaba al condominio, por lo que reclamó el pago de $2,970,452.07 por incumplimiento de contrato y daños contractuales. Reclamó al amparo de los Arts. 1054 y 1077 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. secs. 3018 y 3052.

Aparte de lo anterior, el Consejo de Titulares alegó que, en el trámite de su reclamación, MAPFRE violó varias disposiciones del Código de Seguros. Ante esto, incluyó una reclamación por daños y honorarios de abogado al amparo de los Arts. 27.164 y 27.165 del Código de Seguros, 26 LPRA secs. 2716d y 2716e. A esos efectos, el Consejo de Titulares aseguró que el 15 de julio de 2019 notificó sobre su reclamación, por escrito, al Comisionado de Seguros y a MAPFRE, según lo exige el Art. 27.164 del Código de Seguros,

*supra*. Asimismo, indicó que no emplazaría a la aseguradora hasta tanto transcurriera el término de sesenta (60) días allí dispuesto para que ésta remediara las violaciones notificadas.

Por su parte, el 9 de enero de 2020, MAPFRE contestó la *Demanda* y luego, el 23 de abril de 2020, presentó una *Moción de desestimación parcial* ante el foro de instancia. Entre otros asuntos, argumentó que la Ley Núm. 247-2018, que enmendó el Código de Seguros para añadir los Arts. 27.164 y 27.165, *supra*, no aplicaba retroactivamente, por lo que el Consejo de Titulares no tenía derecho a instar una demanda por daños al amparo del Código de Seguros, por hechos ocurridos antes de aprobarse el referido estatuto. En la alternativa, argumentó que el Art. 27.164 del Código de Seguros, *supra*, prohíbe que el Consejo de Titulares presente, de forma simultánea, una reclamación por incumplimiento de contrato y daños contractuales en virtud del Código Civil, y una reclamación por daños y honorarios de abogado al amparo del Código de Seguros.

El 19 de mayo de 2020, el Consejo de Titulares presentó su *Oposición a moción de desestimación parcial*. En resumen, indicó que el propósito de la ley era proteger a las familias que fueron afectadas por los huracanes Irma y María de actuaciones ilícitas de sus aseguradoras, por lo que resultaba absurdo que la ley no aplicara a los hechos planteados en la *Demanda*. Además, el Consejo de Titulares sostuvo que su reclamación era justiciable, ya que aún

después de la aprobación de la Ley Núm. 247-2018, MAPFRE seguía actuando en violación del Código de Seguros. Esto ocurría al rehusarse a pagar lo debido conforme al contrato entre las partes. Por último, argumentó que nada impedía que el Consejo de Titulares presentara -de manera simultánea- una reclamación por incumplimiento de contrato y daños contractuales en virtud del Código Civil de Puerto Rico y, a la vez, un reclamo por daños y honorarios de abogado al amparo del Código de Seguros.

Así las cosas, el 26 de junio de 2020, el tribunal de instancia emitió una *Sentencia Parcial*, mediante la cual desestimó las reclamaciones que fueron instadas por el Consejo de Titulares en virtud de los Arts. 27.164 y 27.165 del Código de Seguros, *supra*. Según el foro de instancia, el Consejo de Titulares no acreditó haber cumplido con el proceso establecido en el Art. 27.164 del Código de Seguros, *supra*, para poder presentar la causa de acción. En específico, el tribunal de instancia determinó que el citado Art. 27.164 requería que se agotara un procedimiento administrativo antes de recurrir al foro judicial, y añadió que el Consejo de Titulares inició la reclamación ante el tribunal de instancia sin acreditar haber cumplido con dicho trámite.

Inconforme con la decisión del foro de instancia, el 15 de julio de 2020, el Consejo de Titulares recurrió ante el Tribunal de Apelaciones. Mediante una *Sentencia* emitida el 30 de septiembre de 2020, el foro apelativo intermedio

confirmó el dictamen del tribunal de instancia, aunque por un fundamento distinto. Específicamente, resolvió que el Consejo de Titulares cumplió con el requisito de notificación previa el 15 de julio de 2019, según se alegó en la *Demanda*. No obstante, sostuvo que la reclamación por daños y honorarios de abogado presentada al amparo del Código de Seguros era prematura. En ese contexto, el Tribunal de Apelaciones razonó que el Art. 27.164 del Código de Seguros, *supra*, establece un término jurisdiccional de sesenta (60) días luego de efectuarse la notificación para que la aseguradora pague los daños o corrija cualquier deficiencia o violación. Por tanto, concluyó que una causa de acción instada antes del vencimiento del mencionado término de sesenta (60) días debía ser desestimada por prematura.

En su análisis, el Tribunal de Apelaciones destacó que el término de sesenta (60) días después de la notificación enviada por el Consejo de Titulares vencía el 13 de septiembre de 2019, por lo que las reclamaciones instadas al amparo del Código de Seguros el 4 de septiembre de 2019, fueron presentadas a destiempo. En consecuencia, concluyó que procedía la desestimación de dichas reclamaciones por falta de jurisdicción.

En desacuerdo con la determinación del foro apelativo intermedio, el 30 de octubre de 2020, el Consejo de Titulares presentó una moción de reconsideración, la cual fue denegada

mediante *Resolución* emitida el 18 de noviembre de 2020 y notificada el 1 de diciembre de 2020.

Aún inconforme con la decisión del Tribunal de Apelaciones, el 29 de diciembre de 2020, el Consejo de Titulares presentó ante este Foro el recurso que nos ocupa, en el cual planteó lo siguiente:

> Erró el Tribunal de Apelaciones al emitir la Sentencia recurrida y, de esta forma, determinar que el término de sesenta (60) días a partir de la notificación que dispone la [Ley Núm. 247-2018] para que una aseguradora conceda los remedios solicitados por el asegurado bajo la póliza de la que se trate es un término de carácter jurisdiccional antes del transcurso del cual un Consejo de Titulares está impedido de presentar reclamaciones bajo dicho estatuto.

El 26 de marzo de 2021, acogimos el recurso de *Apelación* presentado por el Consejo de Titulares. Como parte del trámite apelativo, el Consejo de Titulares presentó su Alegato el 7 de junio de 2021, mientras que MAPFRE presentó el suyo el 2 de julio de 2021. Así las cosas, el caso quedó sometido en los méritos el 14 de julio de 2021.

Con el beneficio de la comparecencia de ambas partes, procedemos a evaluar el derecho aplicable para resolver la controversia ante nuestra consideración.

## II

### A. La jurisdicción sobre la materia

La jurisdicción es la autoridad que tiene un tribunal para adjudicar los casos y las controversias que se presentan ante su consideración. Beltrán Cintrón *et al.* v. ELA *et al.*, 204 DPR 89, 101 (2020). En Puerto Rico, los

tribunales están facultados para atender cualquier reclamación que presente una controversia propia de adjudicación, siempre que tengan jurisdicción sobre la materia. Íd. La jurisdicción sobre la materia se refiere a "la capacidad del tribunal para atender y resolver una controversia sobre un aspecto legal". Íd.; Rodríguez Rivera v. De León Otaño, 191 DPR 700, 708 (2014). Dicha capacidad solo puede ser limitada por el Estado y ello solamente mediante la aprobación de leyes a esos efectos. Beltrán Cintrón et al. v. ELA et al., supra; Rodríguez Rivera v. De León Otaño, supra, a las págs. 708-709.

Es norma reiterada que la falta de jurisdicción sobre la materia no puede ser subsanada. Beltrán Cintrón et al. v. ELA et al., supra, pág. 101; González v. Mayagüez Resort & Casino, 176 DPR 848, 855 (2009). Tampoco las partes pueden otorgarle jurisdicción a un tribunal que no la tiene ni el tribunal puede atribuírsela a sí mismo. Beltrán Cintrón et al. v. ELA et al., supra; González v. Mayagüez Resort & Casino, supra.

Cabe resaltar que la falta de jurisdicción sobre la materia puede ser planteada en cualquier etapa de los procedimientos, ya sea por las partes o por el propio tribunal. Beltrán Cintrón et al. v. ELA et al., supra, pág. 102. Además, conlleva la nulidad de los dictámenes emitidos, por lo que tan pronto un tribunal determina que no tiene jurisdicción sobre la materia, entonces debe desestimar la reclamación sin entrar en los méritos de las

cuestiones planteadas ante su consideración. Íd., págs. 101-102; González v. Mayagüez Resort & Casino, *supra*, págs. 855-856.

**B. Los términos jurisdiccionales y la interpretación de las leyes**

Los términos jurisdiccionales son fatales e insubsanables. Rosario Domínguez *et als*. v. ELA *et al.*, 198 DPR 197, 208 (2017); Reliable Financial v. ELA, 197 DPR 289, 310 (2017). En efecto, su incumplimiento priva al tribunal de autoridad para adjudicar el asunto que se intenta traer ante su consideración. Rosario Domínguez *et als*. v. ELA *et al.*, *supra*, págs. 208-209.

Con el fin de determinar si un término es de carácter jurisdiccional, los tribunales deben realizar un ejercicio de interpretación estatutaria para hallar la expresión clara del legislador en relación con la naturaleza de dicho término. Cruz Parrilla v. Depto. Vivienda, 184 DPR 393, 404 (2012). Ante las graves consecuencias que conlleva el determinar que un término es de carácter jurisdiccional, hemos expresado que debe surgir claramente la intención del legislador de imponerle esa característica a dicho término. Cruz Parrilla v. Depto. Vivienda, *supra*, págs. 403-404. Véase, además, Rosario Domínguez *et als*. v. ELA *et al.*, *supra*, pág. 209.

A través de la jurisprudencia, este Tribunal ha expuesto que todas las leyes requieren de nuestra interpretación, por lo que -de conformidad con ello- hemos adoptado el principio de hermenéutica que establece que "al aplicar una ley

siempre es necesario interpretarla". IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712, 739 (2012). En esta tarea de la interpretación estatutaria, constituye un principio esencial el que al texto de la ley "se le tiene que brindar aquel significado que le imprima validez al propósito que tuvo el legislador al aprobarla". Íd., pág. 738.

Así pues, indagar sobre la verdadera intención del legislador al aprobar una ley cobra mayor importancia cuando estamos ante un estatuto cuyo contenido resulta confuso. IFCO Recycling v. Aut. Desp. Sólidos, *supra*, pág. 739; Consejo Titulares v. DACo, 181 DPR 945, 960 (2011). De hecho, ante la letra de una ley ambigua o incierta, tenemos la obligación de inclinarnos "hacia aquella solución que mejor capte el impacto del estatuto en términos del bienestar general y que mejor perciba la intención legislativa al adoptar la norma enfilada a propiciar el interés público". (Énfasis omitido). Íd., pág. 960 (citando a Sucn. Álvarez v. Srio. de Justicia, 150 DPR 252, 274 (2000)). Si la interpretación literal de un texto legal incierto nos lleva a un resultado absurdo o contrario a la verdadera intención del legislador, entonces es necesario rechazar esa interpretación literal. IFCO Recycling v. Aut. Desp. Sólidos, *supra*, pág. 740; Consejo Titulares v. DACo, *supra*, pág. 959.

Entre las fuentes que resultan útiles en el proceso de descubrir la voluntad de la Asamblea Legislativa al adoptar un estatuto se encuentran: el historial legislativo de la

disposición legal objeto de controversia, los datos recogidos en el informe de la comisión legislativa que estudió el proyecto de ley y las expresiones que se dieron en el hemiciclo durante la sesión de aprobación del estatuto, según recogidas en el Diario de Sesiones. Consejo Titulares v. DACo, *supra*, págs. 960-961. Además, es preciso señalar que, en el proceso de interpretación de la ley, resulta pertinente considerar la naturaleza del problema o la necesidad existente que se quiso atender mediante la legislación. IFCO Recycling v. Aut. Desp. Sólidos, *supra*, pág. 739; CBS Outdoor v. Billboard One, Inc. *et al.*, 179 DPR 391, 417 (2010). En ocasiones, el texto de una ley, por sí solo, no revela su propósito. Por eso, al interpretar una ley, resulta pertinente conocer el contexto histórico, cultural y social en el que se aprobó. IFCO Recycling v. Aut. Desp. Sólidos, *supra*, pág. 740 (citando a Orsini García v. Srio. de Hacienda, 177 DPR 596, 612 (2009)). Véase, además, R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed. rev., San Juan, Pubs. JTS, 1987, págs. 369-386.

**C. La Ley Núm. 247-2018 y los Arts. 27.164 y 27.165 del Código de Seguros**

La temporada de huracanes de 2017 trajo consigo consecuencias devastadoras, para las cuales Puerto Rico no estaba preparado. En el pequeño lapso de dos (2) semanas, durante el mes de septiembre de ese año, los huracanes Irma y María impactaron nuestra Isla, sumiéndonos en una crisis socioeconómica que no habíamos experimentado en décadas.

Las crecidas de ríos, los deslizamientos de terrenos y las inundaciones agravaron los daños que fueron causados por el impacto de los vientos que trajeron ambos ciclones. Lo anterior, sumado a una serie de consecuencias colaterales (como lo fueron, por ejemplo, la falta de energía eléctrica y el acceso limitado a servicios de comunicación y de salud), provocó, además, la pérdida irremplazable de miles de vidas.

Es de conocimiento general que la respuesta de las aseguradoras, ante el panorama sombrío que dejaron estos eventos en nuestra Isla, no fue la esperada. De hecho, varias aseguradoras fueron multadas por la Oficina del Comisionado de Seguros debido a las múltiples violaciones al Código de Seguros de Puerto Rico. Esto, a su vez, motivó a la Asamblea Legislativa a promulgar la Ley Núm. 247-2018, como una protección adicional para los asegurados. Véase Exposición de Motivos de la Ley Núm. 247-2018. Mediante esta ley, se enmendó el Código de Seguros para añadir los Arts. 27.164 y 27.165, *supra*. En términos generales, en virtud de estos artículos, los asegurados pueden presentar un reclamo civil en contra de una aseguradora que les haya causado daños al incurrir en actos contrarios al Código de Seguros. Asimismo, pueden recuperar una cantidad razonable por honorarios de abogado, si prevalecen en su causa de acción.

En lo pertinente a la controversia que nos ocupa, el Art. 27.164 del Código de Seguros, *supra*, dispone lo siguiente:

(1) Cualquier persona podrá incoar una acción civil contra una aseguradora de haber sufrido daños a consecuencia de:

(a) Violaciones por parte de las aseguradoras bajo cualesquiera de las siguientes disposiciones de este título:

. . . . . . . .

(ii) La sec. 2702 de este título.- Competencia desleal; prácticas injustas y engañosas, prohibidas.

. . . . . . .

(vi) La sec. 2708a de este título.- Prácticas prohibidas en los seguros de propiedad.

. . . . . . .

(xi) La sec. 2716a de este título.- Prácticas desleales en el ajuste de reclamaciones.

(xii) La sec. 2716b de este título.- Término para la resolución de reclamaciones.

(b) Por la comisión de cualesquiera de estos actos por las aseguradoras cubiertas bajo este título:

(i) No intentar resolver de buena fe las reclamaciones cuando, bajo un análisis de la totalidad de las circunstancias, podría y debería haberlo hecho, así como cuando no actúa justa y honestamente hacia su asegurado y en consideración de sus intereses;

(ii) Realizar pagos de reclamaciones a asegurados o beneficiarios que no vayan acompañados de una declaración escrita que establezca la cubierta bajo qu[e] se están realizando los pagos; o

(iii) Al no resolver las reclamaciones con prontitud, cuando sea clara la responsabilidad de la aseguradora bajo los términos de una de las secciones de cubierta de la póliza de seguro con el fin de influir en los asentamientos bajo otras porciones o secciones de la cubierta bajo la póliza de seguro.

Una persona, según es definida en la sec. 104 de este título, que presente una acción civil en virtud del inciso (1) de esta sección, no necesita probar que tales actos fueron cometidos o realizados con tal

frecuencia como para indicar una práctica comercial general.

(2) Cualquier persona podrá entablar una acción civil contra una aseguradora no autorizada si dicha parte sufre daños por una violación bajo la sec. 2716a de este título.

(3) **Como condición previa a entablar una acción bajo las disposiciones de esta sección, la parte afectada deberá notificar por escrito al Comisionado y a la aseguradora de la violación. La aseguradora tendrá un término de sesenta (60) días para remediar la misma. El Comisionado, de entender que la notificación por escrito es insuficiente o vaga, devolverá la misma y el término de sesenta (60) días no comenzará a cursar hasta tanto se subsane la deficiencia identificada por el Comisionado.**

(a) Dicha notificación deberá hacerse en un formulario oficial a ser provisto por el Comisionado y deberá contener la siguiente información así como cualquier otra información que el Comisionado, a su discreción, entienda necesario…:

. . . . . . . .

(v) Una declaración de que la notificación se entrega con el fin de perfeccionar el derecho a buscar el recurso civil autorizado por esta sección.

(b) Dentro de los veinte (20) días posteriores al recibo de la notificación, el Comisionado podrá devolver cualquier notificación que no proporcione en el aviso la información específica requerida por esta sección. El Comisionado deberá indicar las deficiencias específicas contenidas en la notificación.

(c) **No procederá acción alguna si, dentro de los sesenta (60) días posteriores al recibo de la notificación, se pagan los daños o se corrigen las deficiencias o violaciones que fundamentan la notificación.**

(d) El asegurador autorizado que sea el destinatario de la notificación bajo esta sección deberá notificar al Comisionado sobre la resolución de la presunta violación, acompañado por un acuerdo de conformidad y satisfacción firmado por el reclamante o su representante.

(e) **Una notificación bajo este Artículo, así como cualquier otra notificación subsiguiente, interrumpirá por sesenta y cinco (65) días, desde la fecha del depósito en el correo de la notificación, cualquier término prescriptivo para incoar acciones en los tribunales.**

(4) En caso de adjudicación adversa en el juicio o luego de una apelación, el asegurador autorizado será responsable de los daños, junto con costos judiciales y honorarios razonables de abogados incurridos por el demandante.

. . . . . . . .

(6) El recurso civil especificado en esta sección no sustituye cualquier otro recurso o causa de acción prevista en virtud de cualquier otro estatuto o de conformidad con las leyes de Puerto Rico o las leyes federales aplicables. Cualquier persona podrá reclamar bajo las disposiciones generales referente a materia de contratos o derecho extracontractual o daños y perjuicios, según contemplados en el Código Civil de Puerto Rico. Sin embargo, los tribunales o foros adjudicativos están impedidos de procesar y adjudicar ambos recursos o causas de acción. Los daños recuperables de conformidad con esta sección incluirá[n] aquellos daños que son un resultado razonablemente previsible de una violación específica de esta sección por la aseguradora autorizada y puede incluir una adjudicación o juicio por un monto que exceda los límites de la póliza. (Énfasis suplido). 26 LPRA sec. 2716d.

De prevalecer en la reclamación instada al amparo del citado Art. 27.164 del Código de Seguros, *supra*, el asegurado tendrá derecho a obtener una suma razonable por concepto de honorarios de abogado. Ese derecho aparece consignado en los Arts. 27.164(4) y 27.165 del Código de Seguros, *supra*.

El historial legislativo de la Ley Núm. 247-2018 revela la clara intención de proveer nuevas herramientas y remedios

a los asegurados por el incumplimiento de las aseguradoras con las disposiciones del Código de Seguros y, de esta forma, aligerar la recuperación de Puerto Rico luego del paso de los huracanes Irma y María. De hecho, el problema que se quiso atender surge claramente de la Exposición de Motivos de la citada ley, en la cual se expresó que:

> Los huracanes Irma y María dejaron a su paso devastación y desasosiego a niveles nunca antes vistos en todo el Mar Caribe, y especialmente en Puerto Rico. Medios nacionales han reseñado que al menos una tercera parte de las viviendas en Puerto Rico fueron destruidas o severamente afectadas, a tal nivel que las mismas se volvieron inhabitables. Muchos ciudadanos que fueron víctimas de esta catástrofe contaban con un seguro de propiedad, del cual esperaban recuperar los recursos para así poder iniciar el proceso de reconstrucción y recuperación de sus viviendas, y con éstas, su antiguo estilo de vida.
>
> No obstante, la respuesta por parte de la industria de seguros ante esta histórica catástrofe ha sido una plagada de retrasos, mal[os] manejos y de reiteradas violaciones a las disposiciones de nuestro Código de Seguros. Dichas violaciones resultaron en la expedición de multas totalizando sobre 2.4 millones de dólares por tardanzas y faltas en la resolución y pago de reclamaciones. Para el mes de febrero de 2018, el Comisionado de Seguros de Puerto Rico (en adelante "el Comisionado"), habría emitido 2,587 órdenes de violaciones a aseguradoras en Puerto Rico. Un mes más tarde, el Comisionado emitió una gran cantidad de multas adicionales las cuales totalizaban cerca de $500,000.00. Este patrón de reiteradas violaciones por parte de compañías aseguradoras mueve a esta Asamblea Legislativa a legislar a los fines de brindar herramientas y protecciones adicionales en beneficio de los asegurados para garantizar el fiel cumplimiento de los fines del Código de Seguros y así agilizar el proceso de recuperación de Puerto Rico. (Citas omitidas).

Es preciso señalar que idénticas motivaciones se desprenden de los informes de las comisiones legislativas que estudiaron el P. de la C. 1645 de la Cámara de Representantes (precursor de la Ley Núm. 247-2018). En particular, en su Informe de evaluación de la medida, la Comisión de Asuntos del Consumidor, Banca y Seguros de la Cámara de Representantes expresó lo siguiente:

> La Comisión entiende que la presente medida según radicada es necesaria para **proveer remedios y protecciones civiles adicionales a la ciudadanía, en caso de incumplimiento por parte de la aseguradora.** Esto se hace más palpable y necesario luego de las complicaciones experimentadas tras el paso del huracán María, por l[o] cual la Oficina del Comisionado de Seguros se vio obligad[a] a imponer $2.4 millones de dólares por tardanzas y faltas en la resolución y pago de reclamaciones. (Énfasis suplido). Diario de Sesiones de la Cámara de Representantes de 20 de agosto de 2018, Cuarta Sesión Ordinaria, 18va Asamblea Legislativa, pág. 55.

De otra parte, la Comisión sobre Relaciones Federales, Políticas y Económicas del Senado de Puerto Rico manifestó lo siguiente:

> […] Luego del paso de los huracanes Irma y María, la recuperación de los hogares, comercios y la infraestructura en general se ha visto afectada por la excesiva dilación, por la inacción y los reiterados incumplimientos de las aseguradoras. Es por ello que resulta pertinente que esta Asamblea Legislativa tome las provisiones necesarias **para atender estos asuntos y proveerles a sus ciudadanos las herramientas y los recursos necesarios para afrontar las vicisitudes que conllevan los procesos de reclamaciones de las cubiertas de las pólizas de seguros.**
>
> Cónsono con lo anterior, entendemos que facilitar el acceso a remedios civiles, viabilizar el sufragio de los honorarios de abogado y facilitar la concesión de remedios

para todos los asegurados es una medida de justicia y avanzada, sobre todo en tiempo de inminente recuperación y desarrollo como los que atravesamos. (Énfasis suplido). Informe positivo de 17 de septiembre de 2018 sobre el P. de la C. 1645, Comisión sobre Relaciones Federales, Políticas y Económicas del Senado de Puerto Rico, pág. 4.

Cabe resaltar que, previo a la aprobación de la Ley Núm. 247-2018, algunos Estados ya reconocían en sus ordenamientos el derecho de los asegurados a instar una acción civil contra actos ilegales y de mala fe por parte de sus aseguradoras y, en consecuencia, a recobrar cierta cuantía por honorarios de abogado. De hecho, en la Exposición de Motivos de la Ley Núm. 247-2018 se incluyeron como ejemplos los estatutos que rigen en Florida (Fla. Stat. Ann. sec. 624.155), Georgia (Ga. Code Ann. sec. 33-4-6), Luisiana (La. Stat. Ann. sec. 22:1973) y Texas (Tex. Ins. Code Ann. sec. 542A.003).[1]

## III

El Consejo de Titulares sostiene que el Tribunal de Apelaciones erró al resolver que el requisito de notificación previa que establece el Art. 27.164 del Código de Seguros, *supra*, y los términos relacionados a éste, son de carácter jurisdiccional. A esos efectos, argumenta que la Ley Núm. 247-2018 no establece expresamente que esos elementos son jurisdiccionales y que, por tanto, resolver lo contrario quebrantaría la intención legislativa de proveer a los asegurados unas protecciones y unos remedios

---

[1]   Véase Exposición de Motivos de la Ley Núm. 247-2018.

adicionales contra actos ilegales de sus aseguradoras. De este modo, el Consejo de Titulares plantea que no procede la desestimación de las reclamaciones que instó en contra de MAPFRE al amparo del Código de Seguros. No nos persuade.

Si bien es cierto que la Ley Núm. 247-2018 se promulgó en beneficio de los asegurados con el fin de brindarles herramientas y remedios adicionales contra actos ilegales de sus aseguradoras, también provee directrices claras para poder obtener dichos beneficios. Sin duda, los asegurados tienen una herramienta adicional para promover la solución de sus reclamaciones fuera de los tribunales, pero claramente tienen que seguir los pasos requeridos.

En efecto, del texto de la ley surge de manera clara que, como condición previa para instar una reclamación en virtud de las disposiciones del Art. 27.164 del Código de Seguros, *supra*, la parte afectada tiene que notificar por escrito al Comisionado de Seguros y a la aseguradora sobre la violación por la que reclama. Una vez realizada dicha notificación, entonces comienza a transcurrir un término de sesenta (60) días, dentro del cual la aseguradora podrá remediar la presunta deficiencia o violación. Ese término es ineludible e improrrogable. La única salvedad que se incluye en el texto de la ley es que, si el Comisionado de Seguros devuelve una notificación por considerarla insuficiente, entonces el término de sesenta (60) días no comienza a transcurrir hasta que se subsane la deficiencia. Lo anterior no derrota la naturaleza jurisdiccional del

término; sólo establece el punto de partida para computar dicho término en aquellos casos en los que la notificación no cumpla con la suficiencia requerida por el inciso (3)(a) del Art. 27.164 del Código de Seguros, *supra*.

Además, nótese que el inciso (3)(c) del Art. 27.164 del Código de Seguros, *supra*, establece que "[n]o procederá acción alguna si, dentro de los sesenta (60) días posteriores al recibo de la notificación, se pagan los daños o se corrigen las deficiencias o violaciones que fundamentan la notificación". De igual manera, el inciso (3)(a)(v) del Art. 27.164 del Código de Seguros, *supra*, indica que dicha notificación tiene el propósito de "perfeccionar el derecho a buscar el recurso civil autorizado por esta sección". Por su parte, el inciso (3)(e) del Art. 27.164 del Código de Seguros, *supra*, dispone que "[u]na notificación bajo este [a]rtículo, así como cualquier otra notificación subsiguiente, interrumpirá por sesenta y cinco (65) días, desde la fecha de depósito en el correo de la notificación, cualquier término prescriptivo para incoar acciones en los tribunales". Este último término tampoco admite excepción.

Así pues, resulta evidente que el Art. 27.164 del Código de Seguros, *supra*, establece una ventana de sesenta (60) días para que la aseguradora remedie las deficiencias o violaciones notificadas por el asegurado, ello sin la intervención de los tribunales. En cierto modo, ese término de sesenta (60) días provee una última oportunidad para que la aseguradora responda extrajudicialmente y dentro de un

término fijo. Si la aseguradora opta por no atender el reclamo dentro de esos sesenta (60) días, por la razón que fuere, entonces podría enfrentar una demanda por daños y honorarios de abogado amparada en el Código de Seguros.

Esta es la única interpretación que admite el texto legal ante nuestra consideración. Ciertamente, la ley no deja al arbitrio del asegurado el momento en que se configura la causa de acción ni cuándo tiene derecho a presentarla.

El Consejo de Titulares argumenta que, si catalogamos el término de sesenta (60) días como uno jurisdiccional, en un escenario en el que la aseguradora responda dentro de esos sesenta (60) días, los tribunales carecerían de jurisdicción para dirimir si ésta efectivamente remedió las deficiencias o violaciones notificadas. Sin embargo, dicha premisa es incorrecta. La Ley Núm. 247-2018 dispone específicamente que "[n]o procederá acción alguna si, dentro de los sesenta (60) días posteriores al recibo de la notificación, **se pagan los daños o se corrigen las deficiencias o violaciones que fundamentan la notificación**". (Énfasis suplido). Art. 27.164(3)(c) del Código de Seguros, *supra.* Incluso, el estatuto añade que la resolución de la violación notificada por el asegurado debe quedar evidenciada en un acuerdo de conformidad y satisfacción firmado por el reclamante (el asegurado) o su representante. Art. 27.164(3)(d) del Código de Seguros, *supra.* Por consiguiente, si la aseguradora proporcionara algún remedio dentro del término de sesenta (60) días y éste no se ajustara

a la reclamación notificada, entonces queda a discreción del

asegurado aceptar la oferta o reclamar judicialmente el

remedio que entienda prudente.  De igual forma, si la

aseguradora contestara la reclamación dentro de los sesenta

(60) días, pero denegara los remedios solicitados, entonces

el asegurado sigue teniendo la opción y el derecho de

presentar una acción por daños al amparo del Código de

Seguros.

La conclusión a la que llegamos se ajusta a lo que ha

sido resuelto por otros tribunales en los Estados cuyas

leyes sirvieron de modelo para la que hoy aquí

interpretamos.[2]  De hecho, en Talat Enterprises, Inc. v.

Aetna Cas. & Sur. Co., 753 So. 2d 1278, 1283-1284 (2000),

el Tribunal Supremo de Florida realizó las siguientes

expresiones, las cuales resultan particularmente

---

[2]    Véanse, por ejemplo, Vaughn v. Producers Agriculture Ins. Co., 111 F. Supp. 3d 1251, 1254-1255 (N.D. Fla. 2015)("A civil remedy notice is a condition precedent to bringing a bad faith claim under section 624.155."); Heritage Corp. of S. Fla. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 580 F. Supp. 2d 1294, 1299-1300 (S.D. Fla. 2008), aff'd, 361 F. App'x 986 (11mo. Cir. 2010) ("The purpose of a civil remedy notice is to give insurer a final opportunity to settle an insured's claim and avoid unnecessary bad-faith litigation."); Talat Enterprises, Inc. v. Aetna Cas. And Sur. Co., 753 So. 2d 1278, 1283 (Fla. 2000)("The statutory cause of action simply never comes into existence until the expiration of the sixty-day window without the payment of the damages owed under the contract."); López v. Geico Cas. Co., 968 F. Supp. 2d 1202, 1208 (S.D. Fla. 2013)("[W]here an insured fails to file a [civil remedy notice] her statutory bad faith claim will be dismissed."); Lavoi Corp., Inc. v. National Fire Ins. of Hartford, 293 Ga. App. 142, 146, 666 S.E.2d 387, 391 (2008)("To prevail on a claim for an insurer's bad faith under OCGA § 33-4-6, the insured must prove: (1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith."); Perret v. Allstate Insurance Company, 354 F. Supp. 3d 755, 757 (S.D. Tex. 2018)("The 60 day notice requirement is to 'discourage litigation and encourage settlements of consumer complaints… by allowing the defendant-insurer a right and opportunity to make a settlement offer.'").

persuasivas debido a que el texto legal que ese foro interpretó en esa ocasión es prácticamente idéntico al texto incluido en el Art. 27.164 de nuestro Código de Seguros, *supra*:

> [D]ebe reconocerse que lo que crea la sección 624.155 de los Estatutos de Florida (1993) es un 'recurso civil' estatutario. Para [el asegurado] no hay remedio sin el estatuto. De conformidad con el estatuto, **no hay remedio hasta que el asegurado envíe la notificación y la aseguradora tenga la oportunidad de "subsanar" la violación.** Si la aseguradora paga los daños durante el período de subsanación, entonces no hay remedio. **Para que esto concuerde con la lógica y el sentido común, esto tiene que significar que los daños extracontractuales que pueden recuperarse únicamente en virtud de este estatuto de remedio civil no pueden recuperarse cuando la acción en sí no ha madurado** si la aseguradora paga lo adeudado en la póliza de seguro durante el período de subsanación. **La causa de acción legal por daños extracontractuales simplemente nunca llega a existir hasta el vencimiento del período de sesenta días sin el pago de los daños adeudados en virtud del contrato.** Entendemos que[,] al crear este remedio legal para acciones de mala fe, la Legislatura proporcionó esta ventana de sesenta días como una última oportunidad para que las aseguradoras cumplan con sus obligaciones de manejo de reclamos cuando una decisión de buena fe por parte de la aseguradora indicaría que los beneficios contractuales se adeudan. (Énfasis suplido y traducción nuestra).**3**

---

**3** "[I]t must be recognized that what section 624.155, Florida Statutes (1993), creates is a statutory 'civil remedy'. For [the insured] there is no remedy without the statute. Pursuant to the statute, there is no remedy until the notice is sent by the insured and the insurer has the opportunity to "cure" the violation. If the insurer pays the damages during the cure period, then there is no remedy. For this to comport with logic and common sense, this has to mean that extra-contractual damages that can be recovered solely by reason of this civil remedy statute cannot be recovered when the remedy itself does not ripen if the insurer pays what is owed on the insurance policy during the cure period. The statutory cause of action for extra-contractual damages simply never comes into existence until expiration of the sixty-day window without the payment of the damages owed under the contract. We find that in creating this statutory remedy for bad-faith actions, the

El Consejo de Titulares también esboza que catalogar como jurisdiccionales los términos relacionados con el requisito de notificación previa establecido en el Art. 27.164 del Código de Seguros, *supra*, contraviene el espíritu de la ley. A su juicio, esa interpretación limita los derechos que la Asamblea Legislativa quiso conceder y, a su vez, trastoca el principio de economía procesal que debe imperar en los foros judiciales. No le asiste la razón.

La decisión que hoy emitimos no cierra las puertas del tribunal a los asegurados que podrían tener un reclamo válido por daños y honorarios de abogado, al amparo de los Arts. 27.164 y 27.165 del Código de Seguros, *supra*. Tampoco le resta fuerza o validez a las herramientas y a los remedios allí provistos. Más bien, promueve que se sigan las directrices establecidas por la Asamblea Legislativa para la utilización de esas herramientas y la obtención de esos remedios. Dichas directrices son claras y no admiten otra interpretación.

Así pues, tanto el requisito de notificación previa impuesto en el Art. 27.164 del Código de Seguros, *supra*, como el término de sesenta (60) días dispuesto para que las aseguradoras subsanen cualquier deficiencia o violación, cumplen un propósito claro; éstos no se imponen en el vacío. Además, con éstos, se fomenta la solución justa de

---

Legislature provided this sixty-day window as a last opportunity for insurers to comply with their claim-handling obligations when a good-faith decision by the insurer would indicate that contractual benefits are owed." Talat Enterprises, Inc. v. Aetna Cas. & Sur. Co., 753 So. 2d 1278, 1283-1284 (Fla. 2000).

reclamaciones fuera del tribunal y dentro de un término fijo. Incluso, se alivia la carga en los tribunales, evitando así la presentación de demandas a destiempo. De ahí que no resulte impropio o injusto reconocer la naturaleza jurisdiccional de dichos requisitos. A fin de cuentas, debe respetarse la voluntad de la Asamblea Legislativa.

En el caso ante nuestra consideración, en abril de 2018, el Consejo de Titulares reclamó a MAPFRE los beneficios de la póliza que le cobijaba, esto por los daños que sufrió el condominio tras el paso de los huracanes Irma y María. Luego, el 15 de julio de 2019, realizó adecuadamente la notificación previa que requiere el Art. 27.164 del Código de Seguros, *supra*, ante la insatisfacción con las gestiones de MAPFRE. De ahí que MAPFRE contaba con sesenta (60) días para subsanar las violaciones notificadas. Además, el término para que el Consejo de Titulares pudiera presentar una reclamación por daños y honorarios de abogado al amparo del Código de Seguros quedó interrumpido por sesenta y cinco (65) días desde la fecha de la notificación. Esos términos vencieron el 13 y 18 de septiembre de 2019, respectivamente. No obstante, la *Demanda* fue presentada el 4 de septiembre de 2019. En ese momento, el Consejo de Titulares no tenía derecho a instar la causa de acción por daños y honorarios de abogado al amparo del Código de Seguros. En particular, dicha causa de acción está disponible únicamente si, dada una última oportunidad, la aseguradora opta por no remediar

un reclamo debidamente notificado, dentro del término de sesenta (60) días. Claramente, una acción civil instada antes de transcurrir el mencionado término limita el derecho que tiene la aseguradora de subsanar la presunta violación y evitar un reclamo adicional por daños, según lo contempla el Código de Seguros. Además, también despoja al tribunal de autoridad para atender la reclamación, ya que nunca se configuró la causa de acción.

En consecuencia, concluimos que procedía la desestimación de las reclamaciones instadas por el Consejo de Titulares al amparo del Código de Seguros, por éstas haber sido prematuras. En efecto, el Tribunal de Apelaciones resolvió correctamente que no había jurisdicción sobre la materia en cuanto a dichas reclamaciones.

## IV

Por los fundamentos antes expresados, se confirma la *Sentencia* emitida por el Tribunal de Apelaciones el 30 de septiembre de 2020.

Se dictará *Sentencia* de conformidad.


                                        ROBERTO FELIBERTI CINTRÓN
                                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Consejo de Titulares de
76 Kings Court Condominium

     Apelante

       v.                  AC-2020-103      Apelación

MAPFRE PRAICO Insurance Company

     Apelada

SENTENCIA

En San Juan, Puerto Rico, a 24 de marzo de 2022.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, confirmamos la Sentencia del Tribunal de Apelaciones emitida el 30 de septiembre de 2020.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo